Myers, J.
 

 There are two questions for review. The first is whether there was sufficient evidence of wanton misconduct upon the part of defendant, Chaplin, to make a-jury question. The second concerns the refusal of the trial court to give a requested special charge.
 

 Early in the afternoon of September 2, 1936, defendant was driving from Lima to Payne, Ohio, northerly on route 115, a straight, level highway consisting of an eighteen-foot, hard, cement surface and a solid berm on each side of sufficient width for an automoile to pass on the outside of the hard cement surface. In
 
 *247
 
 the automobile with defendant were three other men. Plaintiff was on the rear seat on the right, one Hyman Katz on the rear seat on the left and one Woodrow Anderson was on the front seat to the right of the driver.
 

 Plaintiff and defendant were connected with the United Mercantile Company engaged in the purchase and sale of depressed stocks of merchandise. Anderson was an employee. The purpose of the trip to Payne was to inspect some merchandise of which Katz was a prospective purchaser. Plaintiff was a guest in the automobile. The day was clear and the road dry.
 

 After they had left Lima and were some miles out in the country it was discovered that no one had the key to the storeroom at Payne, whereupon they returned to a jewelry store at Lima, secured the key and started again. Plaintiff and Katz testified to the effect that defendant was provoked on account of losing time to return for the keys and thereafter on the way to Payne drove seventy to eighty miles an hour. Defendant, however, testified that at no time did he drive more than fifty miles an hour. There was evidence to the effect that defendant’s automobile was swerving back and forth on the road and that plaintiff, sometime before the accident, protested about the speed and the kind of driving but that the defendant paid no heed thereto and kept on driving in the same manner.
 

 About fifteen or sixteen miles north of Lima another highway known as West road intersects route 115. This is about four or five miles north of Vaughnsville, Ohio. At and shortly before the time of the accident Mrs. Stirn was driving a Ford automobile in a northerly direction ahead of Chaplin’s car. Attached to the rear of her automobile was a two-wheeled trailer. Mrs. Stirn lived approximately one-half mile west of route 115 on West road and expected to turn left from route 115 on West road, but, the collision having intervened, did not do so.
 

 
 *248
 
 Tlie Ford automobile and trailer of Mrs. Stirn, when first seen, were moving northerly on route 115 approximately twenty to twenty-five miles per hour. The automobile was in the middle of the road but the trailer was wobbling back and forth. Defendant testified that Mrs. Stirn’s car and trailer first veered to the left as if to turn into West road and then suddenly turned to the right; that at first he was going to pass on her right but seeing her car turn back to the right he was confronted with an emergency and was obliged to turn back to pass her on the left. The front half of defendant’s automobile had passed the trailer on the left and was alongside the Ford automobile when suddenly the left front corner of the two-wheeled trailer struck the automobile of the defendant, either on the panel between the front and back doors on the right hand side or further in the rear, causing the trailer to run off the road and the automobile of the defendant to turn over and land on its side in the intersection of route 115 and West road, about half of the car being on the cement pavement on route 115 and half on the macadam of West road. The Ford automobile of Mrs. Stirn continued north without turning over or leaving the road. There was no other traffic on the highway immediately preceding or at the time of the accident.
 

 There is evidence in the record that protests were made by plaintiff to defendant about his driving, sometime prior to the collision. In order to throw light on the subject we give some of the testimony. Mr. Katz testified in part as follows:
 

 “Q. That is for the jury, Mr. Katz. If you will just tell how he drove, in what manner he drove and how fast he drove; that is what you are to tell? A. Well, I think his speed, he averaged seventy or seventy-five or eighty miles an hour.
 

 “Q. And how did he drive with reference to the roadway? A. To the roadway?
 

 “Q. Yes. A. Well, we were all over that roadway.
 

 
 *249
 
 ‘ ‘ Q. What was his attitude toward the other passengers in the car? A. Well, his conversation was with Mr. Akers; I kept my mouth shut, I didn’t say anything. * * *
 

 “Q. What did Mr. Akers say? A. Mr. Akers cautioned him, asked him if he wouldn’t quit driving that way to stop and let him out — let him get out of the car.
 

 “Q. How many times did Mr. Akers say that? A. At least on three or four different occasions.
 

 “Q. Did he respond to Mr. Akers’ request by saying something? A. Yes, he says, ‘Oh, go to hell.’ ”
 

 The plaintiff testified in part as follows:
 

 “A. He [Harry P. Chaplin] was driving about eighty miles an hour and I cautioned him against the speed he was driving at.
 

 “Q. Remember what you said to him? A. I told him that I didn’t want to drive in a car at that rate of speed, that it wasn’t necessary.
 

 “Q. And do you remember whether you did that once, or more than once? A. I did it several times.
 

 “Q. What response did he give you to your remarks, Mr. Akers? A. Told me to go to hell.”
 

 While the foregoing evidence is controverted by the defendant and his witness, Anderson, nevertheless, upon motion for a directed verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor and if from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury.
 
 Hamden Lodge
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246;
 
 Hubach
 
 v.
 
 Cole,
 
 133 Ohio St., 137, 12 N. E. (2d), 283.
 

 This court has held that excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness.
 
 Morrow
 
 v.
 
 Hume, Admx.,
 
 131 Ohio St., 319, 3 N. E. (2d), 39. In that case, on page 324, this court said “wantonness can never be predicated upon speed alone; but when the
 
 *250
 
 concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person’s jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another’s safety may amount to wantonness,” citing
 
 Vecchio
 
 v.
 
 Vecchio,
 
 131 Ohio St., 59, 1 N. E. (2d), 624;
 
 Universal Concrete Pipe Co.
 
 v.
 
 Bassett,
 
 130 Ohio St., 567, 200 N. E., 843.
 

 It is urged by the defendant that inasmuch as the protests of the plaintiff about the manner of driving were not made just before the accident or at the time when the emergency arose in reference to Mrs. Stim’s automobile and trailer, therefore, the protests must have been in relation to speed alone, and since speed alone would not necessarily be an act of wantonness, the defendant was not guilty of wanton misconduct in respect to the collision and accident that happened. Here again, however, we must revert to the principles enunciated in the
 
 Morrow, Vecchio
 
 and
 
 Bassett cases, supra.
 
 All of the circumstances bearing on the immediate situation must be taken into consideration. In the instant case there was not only evidence of excessive speed of the defendant’s automobile and his refusal to heed the repeated protests of the plaintiff in respect thereto, but also evidence that the trailer, attached to the Ford automobile ahead, was wobbling from one side to the other — all, together, creating a dangerous situation of which the defendant must have been aware. That a dangerous situation existed together with excessive speed is also evidenced to some extent by the testimony of Anderson as a witness for the defendant. On cross-examination he admitted that he had told a Mrs. Bennet that they “were going seventy or seventy-five or eighty miles an hour.”
 
 *251
 
 Under all of the circumstances of the instant case the question of wanton misconduct was not one of law hut one of fact for the jury under proper instructions of the court.
 

 The trial court covered the question of excessive speed, not only in its general charge, but, at the request of defendant, gave to the jury the following special charge before argument:
 

 “Ladies and gentlemen of the jury: I charge you, as a matter of law, that if you find that, prior to the time of the collision and at the time of the collision, the automobile of the defendant was being operated at an excessive rate of speed, such excessive rate of speed is not of itself sufficient to constitute an act of wantonness. ”
 

 The instructions of the trial court to the jury on the question of excessive speed were in accord with previous decisions of this court.
 

 Upon a careful examination of the record we are of opinion that there was sufficient evidence to go to the jury on the question of wanton misconduct by the defendant. The trial court was not in error in refusing to direct a verdict for the defendant at the close of plaintiff’s evidence or at the close of all the evidence.
 

 The second question for consideration is whether the trial court committed prejudicial error in refusing to give to the jury before argument the following special charge requested by the defendant:
 

 ‘ ‘ Ladies and gentlemen of the jury: I charge you, as a matter of law,
 
 that wanton misconduct is more than negligence, even more than gross negligence,
 
 because negligence does not have for its base either wilfullness or wantonness.” (Italics ours.)
 

 In the ease of
 
 Universal Concrete Pipe Co.
 
 v.
 
 Bassett, supra,
 
 this court pointed out that' the difference between wanton or wilful misconduct and negligence is one of kind and not merely of degree. The italicized part of the requested charge,
 
 supra,
 
 was therefore an
 
 *252
 
 incorrect statement of the law. The trial court was not in error in refusing to give the charge.
 

 Finding no error in the judgment of the' Court of Appeals, the same will he affirmed.
 

 Judgment affirmed;
 

 Weygandt, C. J., Day, Zimmerman, Williams, Matthias and Hart, JJ., concur.