**KENNARD, a Minor, Appellee v. PALMER, Appellant.**

Ohio Appeals, First District, Butler County.

No. 848.   Decided May 3, 1943.

Clinton D. Boyd, Middletown, for appellee.
C. W. Elliott, Middletown, for appellant.

**OPINION**

By ROSS, P. J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Butler county, Ohio, entered upon the verdict of a jury for $10,000.00.

The plaintiff was a guest passenger in an automobile (1937 Chevrolet) driven by the defendant. At the time the plaintiff received his injuries he was 18 years of age. The defendant was at that time 17 years of age. The plaintiff was severely injured and permanently crippled when the automobile driven by defendant contacted another automobile driven by one Michael in the same direction down grade, and when the automobile so driven by defendant swerved across the road into a pile of sand and then careened into a short pole, established as a road guard on the side of the highway. The left leg of plaintiff was severed between the knee and ankle as a proximate result of the collision of the automobile and pole. The whole side of the vehicle was sheared off when the impact occurred. A photograph showing the condition of defendant's automobile immediately afterward indicates that the collision with the pole involved tremendous force. There were two other occupants of the car beside the plaintiff and defendant, Robert Edwards and Roy Nickel, each at the time 18 years of age. There is evidence that all of these youths had been in the automobile for some time, driving along the roads in Butler county and intended to go to Dayton, Ohio. There is evidence that the plaintiff drove on both sides of the road, "all over the highway", "he was all over both sides" it is said. A radio in the vehicle was loudly playing "swing" music. The plaintiff so operated the automobile that he was "driving back and forth across the road keeping time with the music." At least four times the defendant was admonished by the passengers about his driving. However, all the passengers stated that the defendant made no response to the several admonitions and none of them is able to state whether he heard these or not.

The defendant drove up to within four feet of an automobile proceeding in the same direction occupied by three girls. It is stated that "he came right behind within four feet and then swing right out and then dart back again." This manner of operating the vehicle continued up to the time he reached the brow of the hill, on which the collision occurred. The automobile was proceeding at a rate of 65 to 70 miles per hour at that time. The defendant continued this speed down the hill. "I think all the way down the hill," it is stated. He gained speed as he went down the hill. The defendant's automobile had bad tires. As he went down the hill he passed an automobile in the same manner as the automobile containing the girls, and one witness stated "Gleen and Robert were rolling around on the back seat and Robert fell off the back seat once, I think."

The defendant appellant claims that the court should have granted his motion for an instructed verdict and his motion non obstante veredicto.

In considering whether the court erred in its refusal to so grant such motions, only the evidence in the case favorable to the plaintiff can be considered. **Jenkins v. Sharp, 140 Ohio St., 80 at 84; Akers v. Stirn; Chaplin, 136 Ohio St., 245, 249.**

Evidence, therefore, appearing in the record more favorable to the defendant, but not constituting adverse admissions by the plaintiff is ignored in the consideration of the validity of the trial court's action upon the motions.

**Section 6308-6, GC,** provides:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

This section is obviously in derogation of the common law as far as it applies to actions only for injuries in that it deprives the guest of a right to hold the driver of the vehicle liable for a mere failure to exercise ordinary care in his behalf. It is therefore to be liberally construed in favor of such guest. where the guest or his representative sues for injury only as distinguished from an action for wrongful death which was not recognized at common law. Putting it another way, whatever right is still given the guest should be extended in its interpretation to the full limit consistent with the intention of the legislature manifested by the language used in §6308-6, GC.

This section still leaves a right of action in favor of the guest where his injuries are proximately caused by the "wilful or wanton misconduct" of the operator of the motor vehicle. This court in the case of **Schulz v. Fible, 38 Abs 14,** (motion to certify denied, Ohio Bar, April 12, 1943, page 36) had occasion to review at length the decisions of the courts upon what constitutes "wanton or wilful misconduct." In this case a verdict for plaintiff was reversed and judgment entered for defendant. The factual differences between that case and the instant case need no comment. Motion to certify was denied by the Supreme Court.

In **McCoy v. Faulkenberg, 53 Oh Ap, 98,** this court had previously passed upon what was wanton or wilful misconduct, construing the section of the statutes involved in the light of the decisions of courts in other jurisdictions that Ohio, there then being no authoritative

construction of the statute available. It will be noted that in that case the verdict was for the defendant. This statute became effective June 15, 1933. Since such effective date, both the Supreme Court and the Courts of Appeals have had occasion to pass upon the question of whether certain facts constituted wilful or wanton misconduct. Naturally, the facts in each case vary materially and it is difficult to formulate other than very general rules for the determination of what in any particular case does constitute such wilful or wanton misconduct.

The last expression of the Supreme Court which has been noticed in **Jenkins v. Sharp, 140 Oh St., 80** (Ohio Bar, 6/15/43). In that case the defendant being fully aware of the presence of a stop light and stop sign, drove through an intersection against the light and past the stop sign at a speed of from 35 to 50 miles per hour and collided with another vehicle. It is interesting to note that the Supreme Court failed to find that such conduct constituted wilful or wanton misconduct as a **matter of law,** but the court did hold that the evidence of such facts presented a jury question. In the opinion, however, is stated a rule which "contains the essence of general principles heretofore pronounced" by the Supreme Court. The rule is stated as follows:

"* * * 'wanton misconduct is such as manifests a disposition to perversity.' Such a disposition or mental state is shown by a person, when, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he proceeds into the presence of the danger, with indifference to consequences and with absence of all care."

And, again, it is stated:

" '* * * wantonness can never be predicated upon speed alone; but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness.' "

In the Sharp case the verdict of the jury was in favor of plaintiff, the judgment of the Court of Common Pleas was affirmed by the Court of Appeals, and this judgment was affirmed by the Supreme Court.

In **Akers v. Stirn; Chaplin, 136 Oh St, 245,** the rule is announced that speed **alone** is not sufficient to constitute wilful and wanton misconduct. However, it is also held that it is again a question for a

jury to determine the existence of such wilful and wanton misconduct, where the operator of a motor vehicle approaches from the rear at an excessive rate of speed, an automobile proceeding in the same direction, drawing a trailer which is "wobbling back and forth upon the roadway" and attempts to pass such "dangerous situation" in spite of the protests of his guest passenger.

The court in this case also definitely decides that "wilful and wanton misconduct" is **not** a degree of negligence but deals with an entirely different "kind" of tort.

In this case again the verdict was in favor of the plaintiff, the judgment of the trial court affirmed by the Court of Appeals, and that judgment affirmed by the Supreme Court.

In **Vecchio v. Vecchio, 131 Oh St, 59,** judgment of the Court of Common Pleas, sustaining of a demurrer to a petition (reversed by Court of Appeals) was affirmed when it appeared there was no allegation in the petition showing that the defendant had knowledge of his guest's peril, in that case, the insecure fastening of a door to the vehicle.

In **Universal Concrete Pipe Co. v. Bassett, 130 Oh St, 567,** judgments of the Court of Common Pleas and the Court of Appeals, in favor of plaintiff were reversed, the Supreme Court finding the facts alleged and proved not to show the existence of wilful and wanton misconduct. In that case the defendant parked an unlighted truck on a city street, after dark, on a rainy, misty night, two feet from the curb, the lights on the truck having been "burning several miles away and several minutes before the collision."

Referring to Schulz v. Fible, supra, it is apparent from that case and the Bassett case that there may be proof of conditions which show an absence of wilful or wanton misconduct prompted by a perversity of mind, which conduct is a necessary element in a cause of action similar to that here involved.

The cases decided by the various Courts of Appeals merely demonstrate the application of the general rules hereinbefore noted.

Coming back to the facts in the instant case—can this court say as a matter of law either that the defendant was or was not guilty of the charge of wilful and wanton misconduct?

The defendant was evidently operating the automobile at an excessive and highly dangerous rate of speed, in view of the character of the highway traveled containing bends and hills, rough spots and bridges and being only some 20 feet in width. Coupled with such speed was the fact that he was swinging from side to side all over the the road in time with "swing music" as another concomitant circumstance he rushed up to vehicles overtaken to within a few feet of the rear bumpers, while going down grade, at a high speed, swinging sharply out and back in front of them.

His method of passing the vehicle which his own automobile contacted only demonstrates again that his failure to strike other vehicles was due to good fortune, not to the exercise of the slightest

regard for his own safety, or that of other occupants of the car. His final demonstration of such reckless abandon produced a result which could easily have occurred in any of the previous passing of cars. All of this is more than negligence, neglect, or negative inaction. It is evidence substantiating affirmative wilful, wrongful conduct which any reasonable person would know could only sooner or later produce disaster. The defendant saw before him as he approached the last automobile on the hill that it occupied a considerable portion of the highway. He saw the narrow space left to pass, he saw the guard rail, and yet at accelerated speed he ran almost upon the automobile, swung out sharply as he had done before and this time caught. He certainly was aware of the potentialities for danger and injury in the situation confronting him as he raced down the hill and was wholly indifferent to consequences to himself and passengers. Such a state of facts presented a factual issue for the determination of the jury. Of course all these facts together with evidence favorable to the defendant, his age, and the attitude of his guests must be taken into consideration by the jury. Certainly, this court is not warranted in finding as a matter of law that the defendant was not guilty of wilful and wanton misconduct which was the proximate cause of the plaintiff's injury. Nor is this court justified in concluding on an examination of all the evidence that there was no substantial evidence justifying the verdict of the jury. The verdict cannot be set aside on the weight of the evidence.

Before passing to other assignments of error, however it is proper to say that the defendant appellant complains bitterly that evidence of what occurred some time before the collision was improperly admitted. All of this evidence related to conduct showing the attitude of mind of the defendant. Such attitude may be shown by evidence relating to the mental state of the defendant at the very outset of the journey if it is apparent that such attitude continued throughout the trip as was the case here, and prompted conduct which was the proximate cause of the injuries to plaintiff.

The conduct and attiude of the defendant immediately before the collision was identical in character with what it had been throughout the entire trip. If the defendant had safely passed the last automobile it would have just been an added instance of what he had been doing all along.

Counsel for defendant before retirement of the jury presented to the court a written interrogatory and orally requested the court to require the jury to answer same. The record shows the following:

"THEREUPON, Mr. Elliott, Attorney for Defendant, without the hearing of the jury, in the court room and before the retirement of the jury, presented to the court in writing the following interrogatory:

"Was the defendant, at or immediately before the contact with the Michael car, guilty of conduct manifesting a perversity of mind? Answer:_____."

And orally requested the court to submit said interrogatory to the jury and direct it to answer the same in the event it returns a general verdict.

"THEREUPON, the Court refused to submit this interrogatory to the jury.

To which ruling of the Court, defendant at the time excepted."

From the authorities heretofore noted, it is clear that the injuries suffered by the plaintiff must be the proximate result of conduct of the defendant which manifests a "disposition to perversity." It is difficult to imagine a situation in which either perversity of mind or conduct attributable to such an attitude could cease "at or immediately before" the collision, the immediate cause of plaintiff's injuries, and still be the proximate cause thereof.

The jury could have answered this question yes or no.

If they had answered the interrogatories in the affirmative then of course it would have been consistent with the general verdict in favor of plaintiff. Had the answer been no, would this answer have controlled the general verdict in favor of defendant? Such negative answer would have meant that at the time the contact with the Michael car occurred the defendant would have ceased to conduct himself in a manner indicating a perversity of mind. His conduct and perversity of mind might have still continued, and there is plenty of evidence that it did, up to and after the collision with the Michael car. But the plaintiff is not entitled to recover for merely an attitude of mind. He is entitled to recover for "misconduct" of the defendant which proximately caused his injury. It is not entirely clear from the record whether the mere contact with the Michael car was the sole cause of the disaster. It would rather appear that the jury was justified in concluding that the high speed at which the defendant's vehicle was proceeding, accompanied by the manner of his approach to the Michael car, and if his past performance during the trip is considered as a criterion, his attempt to swing around it after actual contact, was the proximate cause of the wrecking of the vehicle. It is true the defendant's automobile ran into a pile of sand and then careened into a post. All of these circumstances which happened in a brief second or two were described to the jury. Still had the jury answered the question in the negative, it would have been difficult to harmonize a general verdict for the plaintiff with such negative answer. In effect it would have meant that just at or immediately before the contact with the Michael car there was a hiatus in the wilful and wanton misconduct of the defendant. That it had existed before and possibly after the contact, but not at the time the defendant precipitated

his car into the situation which caused this disaster. This interrogatory should have been given the jury and its refusal was error prejudicial to appellant.

The court at the request of the plaintiff gave special instruction No. 1:

"The Court charges you that, 'wantonness can never be predicated upon speed alone; but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness.' The Court tells you that is the law."

This is almost a verbatim quotation from **Morrow v. Hume, Admx., 131 Oh. St 319**, as repeated in the opinion of **Akers v. Stirn; Chaplin, 136 Oh St 245, at page 249.** It states the rule of law, but when lifted bodily from an opinion without attempt to apply it to the facts in this case or place the existence of facts upon which the rule is predicated in the alternative, it becomes a misleading instruction prejudicial to this appellant.

In **Kohn, Admx. v. B. F. Goodrich Co., 139 Oh St 141**, the first paragraph of the syllabus is:

"The giving of a special instruction, requested before argument, which, though stating a pertinent legal principal, does not concretely apply it by apt language to evidence in the case, constitutes error, which, if prejudicial, requires reversal of the judgment"

Again, at page 146 of the opinion it is stated:

"It is 'a fundamental principle that a charge of the court should be in the concrete rather than in the abstract. When the element of concreteness is markedly absent, the charge, as sometimes said, 'lacks color.' Abstractness does not necessarily vitiate a charge to the jury and most charges contain a modicum of abstract matter. If the court properly defines the issues and states the law with reference thereto in such form that the jury should understand the application thereof to the evidence, the charge is not vitiated by abstractness. Special instructions likewise must contain language which shows the application of a definite and pertinent legal principle to evidence in the cause on trial."

It would be very easy for the jury to gain the impression from the charge criticized that the court was assuming the existence of

facts which were involved in violent conflicts of evidence.

In **Plotkin v. Meeks, 131 Oh St 493,** the second paragraph of the syllabus is:

"A special charge to the jury requested by a party to an action, which is based on the assumption that a material fact exists in the case, but which in reality is in dispute between the parties, is properly refused."

The giving of this instruction under the circumstances of this case constituted error prejudicial to appellant.

In passing it may not be out of place here to state that the special charges given at the request of the defendant were entirely favorable to him and placed the utmost burden on plaintiff. The defendant's complaint that the court mentioned at whose request the charges were given, in view of the accompanying statement in each case that they are the law, seems rather trivial.

The bill of exceptions contains the following:

"THEREUPON, counsel for the plaintiff argued the case. During the course of argument of counsel for plaintiff he stated that plaintiff did not claim misconduct down there where they struck the machine.

"Counsel for the defendant interrupted to call the court's attention to this part of the argument by counsel for plaintiff and moved that the court direct a verdict in defendant's favor because of said alleged admission contained in said argument.

"The motion was overruled by the court. To which ruling, defendant at the time excepted."

What has been said as to the error committed in the refusal of the special interrogatory is applicable here. The statement of counsel for plaintiff excluded the conduct of the defendant "down there where they struck the machine" as a proximate cause of plaintiff's injury. As was before stated to have been of avail to plaintiff certainly such misconduct must have continued up to and including entrance into the danger zone. The reference in the bill of exceptions is however not clear enough to justify this court in rendering judgment against plaintiff in the absence of other portions of the argument furnishing a setting for the isolated statement which is not even in the form of an exact quotation of the language used. The statement may or may not have been conclusive upon the plaintiff. Coupled, however, with other errors noted in the case, it requires a reversal of the judgment.

It is asserted the court "ignored" the answer of the minor defendant and considered only that of the answer of the guardian

The language of §11322 GC, unquestionably indicates that it was the intention of the legislature that the issues in a case against a minor should be tried upon the general denial of the guardian; otherwise, the provisions of this section would be futile.

It is the further contention of the defendant that the petition does not state a cause of action. No amendment thereto has been tendered by plaintiff. Such defective petition may be attacked at any time, and such defect is not cured by verdict. 31 O. Jur. 987, 989.

In the second and third paragraphs of the syllabus in the case of Vecchio v. Vecchio, 131 Oh St 59, it is stated:

"2. In an action for damages for personal injury instituted by a guest against the operator of a motor vehicle, under favor of Section 6308-6, General Code, such guest must plead facts that reveal on their face the element of wilfulness or wantonness, else such pleading is demurrable. (Universal Pipe Co. v. Bassett, 130 Oh St 567, approved and followed.)

"3. In such action the guest must plead unequivocally that the operator of the motor vehicle had knowledge of existing conditions; otherwise no liability is fixed."

In the petition it is stated:

"That there were numerous vehicles traveling in both directions around the curves and over the hills on said highway at and about the time and place of the collision hereinafter described, all of which the defendant well knew."

It is true a more unequivocal statement of knowledge of conditions might have been made. Facts, however, are stated showing that the defendant was guilty of wilful and wanton misconduct and that such misconduct was the proximate cause of plaintiff's injury. It is also evident from the facts stated that the defendant must have apprehended the conditions which constituted the dangerous situation into which he precipitated himself and the plaintiff without any regard to his safety. Under such circumstances, while the facts are not well stated, if they were they would state a cause of action.

In Bethel v. Woodworth et, 11 Oh St 393, the second and third paragraphs of the syllabus are:

"2. That a defective statement in the petition of the cause of action, is not a cause for reversal of the judgment, if the facts stated in the petition, when well stated constitute a cause of action.

"3. That the verdict or finding of the court after judgment is always presumed to have been on proof of the alleged facts and

necessary circumstances to sustain the truth of such verdict or finding, upon which the judgment has been so rendered."

See also: Green, et v. Carter, Treas., et, 28 Oh Ap 492; Guardian Life Ins. Co. v. Veser, 128 Oh St 200; Parletto v. Industrial Commission, 140 Oh St 12; Humphries v. Wheeling Steel Corp., 132 Oh St 263; Crawford v. Kellermier, 123 Oh St 404.

After verdict, such a defect may not result in a reversal of the judgment thereon.

Thus viewing the case, the judgment of the trial court must be reversed, first, for failure to give the interrogatory requested by defendant, especially in view of the statement of plaintiff's counsel, second, for prejudicial error affecting defendant by the giving of the special charge at the request of the plaintiff, in that it assumed the existence of facts and was a more abstract statement of law.

The defendant is entitled to a new trial.

HILDEBRANT and MATTHEWS, JJ., concur.