PHILLIPS, APPELLEE, *v.* ULLMER, APPELLANT.

(No. 2544—Decided February 18, 1960.)

*Messrs. Beigel & Mahrt,* for appellee.
*Messrs. Holzfaster, Hoefling & Cecil,* for appellant.

CRAWFORD, J. Plaintiff, appellee herein, a guest in an automobile driven by defendant, appellant herein, recovered a judgment of $3,800 damages for personal injuries in an action in which wanton misconduct was alleged.

Defendant makes two assignments of error: (1) The overruling of his motions for directed verdict made at the conclusion of plaintiff's evidence and at the conclusion of all the evidence, and (2) the overruling of his motion for judgment notwithstanding the verdict.

In considering such motions the evidence must be construed most favorably to the party against whom the motions are made, in this instance plaintiff.

Certain facts are undisputed. On October 1, 1957, plaintiff had ridden as a guest in the defendant's 1957 Mercury sedan from Dayton to Xenia, in and near which point defendant made certain business calls. Both parties had done a moderate amount of drinking, but there is no positive indication that either was intoxicated.

They were returning to Dayton around 11:15 p. m., on Ohio State Route 35, a new four-lane highway with a median strip. The pavement was dry. As they were proceeding westwardly and approaching the intersection of route 35 and Fairfield-Bellbrook Road, which runs generally north and south, a vehicle appeared in front of them, a little to the west of or beyond the intersection. Defendant swerved his automobile to the left to avoid a collision, entered the median strip, then proceeded diagonally across the highway and off the pavement to the north, turning over one or more times. Plaintiff was thereby injured. The other automobile was apparently proceeding without lights.

Plaintiff testified that when he and defendant were approximately two or three miles west of Xenia, returning westwardly toward Dayton, defendant was driving at a speed of 100 miles an hour; that plaintiff thereupon said, "Well, slow this thing down; you're going to kill us"; that defendant did not slow down; that a little later plaintiff said, "Walt, the state patrol hangs out down around those intersections down here around Alpha," and "if you go through there like this they are going to throw the key away on you"; that defendant then slowed down to 60 miles an hour or less; that after holding that speed for three to five minutes defendant again gradually increased his speed to approximately 100 miles an hour, when plaintiff said, "Slow this thing down"; and that defendant did not do so.

Plaintiff testified further:

"* * * A couple, maybe, of seconds after that—it was within about a half mile of the Bellbrook-Fairfield intersection where the accident happened, near there, within about a half mile of there I seen the silhouette of another car in front of us," by the aid of the headlights of an eastbound vehicle.

"Q. What did you do then, when you saw this car? A. I said, 'Walt, slow this thing down, there's a car in front of us.'

"Q. Did he slow down? A. He said, 'Oh, it's just crossing over down there' and he didn't slow down.

"Q. He said what? A. He said it was just going across down there.

"Q. Did he slow down? A. No.

"Q. He still maintained a speed of what? A. Approximately 100 miles per hour. I wasn't looking at the speed-

ometer after I seen that car, and the next moment I seen the car in front of us, dead-end, and told him, 'That car is still in front of us,' and I dropped down behind the dash.''

Plaintiff testified further that defendant swerved left at an angle of approximately 90 degrees, and that defendant did not apply his brakes until he swerved.

Some of this testimony is controverted. However, it is not our present task to find the facts but to determine the sufficiency of the evidence to present a jury question.

Along with rendering a general verdict for the plaintiff, the jury answered two special interrogatories, as follows:

"Interrogatory No. I. Does the jury find by a preponderance of evidence that the defendant at or immediately prior to the accident was guilty of wanton misconduct? Answer: Yes.

"Interrogatory No. II. If the answer of the jury to question No. I was yes then state of what acts and omissions of the defendant such wanton misconduct consisted. Answer: The defendant's disregard for his passenger's safety by increasing his speed, after slowing to avoid police detection, despite the high probability of danger and possible injury to guest at known intersection, shows wanton behavior.''

In support of the first assignment of error defendant urges the well recognized principle that excessive speed alone does not constitute wanton misconduct, and that the mental processes of the defendant are an essential element of wanton misconduct. Plaintiff counters with the equally well established principle that the existence of wanton misconduct must be determined in the light of all the circumstances. He contends that those shown here are sufficient to support the verdict.

Numerous cases are cited by both sides. The facts in each case vary somewhat from those in every other case and from those now before us. Nevertheless, some of the cases are helpful in determining our present question whether the evidence, construed most favorably to plaintiff, presents a jury question.

In the case of *Akers* v. *Stirn*, 136 Ohio St., 245, the court pointed out that excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness, because the difference between wanton misconduct and negligence is one of kind and not merely of degree. The court held further:

"2. Where a trailer, attached to an automobile and wobbling back and forth on a roadway, creates a dangerous situation for an automobile approaching from the rear at an excessive rate of speed and attempting to pass such automobile and trailer, the question of whether the driver of the approaching automobile, without heeding the protests of a guest as to the rate of speed and manner of driving, is guilty of wanton misconduct is one of fact for the jury under proper instructions by the court."

Although it is true that the response of the defendant driver in that case was more vocal and violent and the danger perhaps more apparent, at least for a longer time, than in our present case, yet these differences do not render inapplicable the principles there declared.

In the case of *Tighe, a Minor,* v. *Diamond*, 149 Ohio St., 520, the court affirmed a judgment recovered by a guest against a minor host who proceeded at a speed of 50 to 60 miles an hour over a known hump which projected 4 to 5 feet above the general level of the highway. Paragraph five of the syllabus reads:

"5. In an action by an automobile guest against his host driver for personal injuries, unless the facts are undisputed, the question whether the host driver intentionally drove the automobile with wilful disregard of the probable results of such driving or whether he intentionally drove the automobile with knowledge, actual or implied, that serious injury would probably result to the guest, is ordinarily one of fact for the determination of the jury."

In *Jenkins* v. *Sharp*, 140 Ohio St., 80, the defendant host, proceeding along a subordinate thoroughfare, entered an intersection with a main thoroughfare and collided with an automobile proceeding thereon. The defendant driver's view in the direction of the oncoming automobile was obstructed. Such defendant admitted he saw a stop sign, and there was evidence that he did not stop and that he was crossing the main thoroughfare at a speed of from 35 to 50 miles an hour. In affirming the judgment for the plaintiff guest the court held that "the question whether defendant was guilty of wanton misconduct within the meaning of the guest statute (Section 6308-6, General Code) [now Section 4515.02, Revised Code] is for the determination of the jury under instructions of the trial court."

In the case of *Thomas* v. *Foody*, 54 Ohio App., 423, judgment for plaintiff guest was affirmed, the court holding in the third paragraph of the syllabus:

"3. Evidence establishing that the driver of a motor vehicle operated it at an excessive speed around curves in spite of remonstrances on the part of the guest, with knowledge of the existing circumstances, showed a consciousness on the part of the driver that his conduct would in all common probability result in injury to his guest, and is sufficient to show wanton misconduct within the meaning of the guest statute, Section 6308-6, General Code [Section 4515.02, Revised Code]."

Defendant in the present case argues that his act in swerving his automobile so as to miss the other vehicle proves that he exercised some care and was, therefore, not guilty of wanton misconduct. A similar argument was disposed of by the court in *Thomas* v. *Foody, supra,* in the following language of the opinion, at page 428:

"He says that he gripped the wheel and tried to steady and right his car. Remembering, however, that defendant testified that he could not negotiate this curve at sixty miles per hour and that such was his confessed rate of speed, it must follow that he could then exercise no degree of care or perform any act which would avoid the probable and certain catastrophe which was about to happen."

Those cases with their varying facts furnish examples rather than parallels to the one now before us. But we feel that we are in harmony with those cases and with the cases generally in concluding that plaintiff's evidence here presented a question for the jury and was adequate to sustain the verdict.

In urging his second assignment of error, the overruling of his motion for judgment notwithstanding the verdict, defendant contends that there is a fatal inconsistency between the general verdict and the special finding. He argues that the special finding based wanton misconduct upon elements not alleged, *i. e.,* an increasing of speed and the circumstance of the known intersection.

The amended petition alleges failure to decrease speed after remonstrances from plaintiff. The finding that defendant actually increased his speed is directly responsive to this allegation.

The finding that the speed was increased "despite the high probability of danger and possible injury to guest at known intersection" is pertinent to the issue of wanton negligence as made in the pleadings.

The amended petition specifically mentions and locates this Bellbrook-Fairfield intersection in question and says that the parties were returning on a round trip to Xenia. It alleges also plaintiff's repeated remonstrances and avers that upon approaching this particular intersection plaintiff again protested and called attention of defendant to the vehicle ahead. These allegations justify the admission of the evidence pertinent to such facts and to the surrounding circumstances. The evidence of the facts and circumstances was in our opinion sufficient to permit the inferences made by the jury as expressed in its answers to the interrogatories.

The jurors came remarkably close, especially for laymen, to the language customarily used by the courts in describing wanton misconduct. Consider, for example, the first paragraph of the syllabus of *Thomas* v. *Foody, supra,* which reads:

"1. Acts, to be 'wanton' within the meaning of the 'guest statute,' Section 6308-6, General Code, must be done with actual knowledge of existing conditions or surrounding circumstances, and must be such as to make the malefactor conscious that his conduct will in all common probability result in injury to his guest."

The general verdict for the plaintiff was supported rather than challenged or weakened by the finding that "increasing speed despite the high probability of danger and possible injury to guest at known intersection constituted wanton misconduct," a finding which was within the scope of the issues made in the pleadings and presented by the evidence.

It is to be observed that defendant has made some suggestion that perhaps two automobiles rather than one appeared in the vicinity of the intersection. If such were the case, we fail to see how that could reduce his responsibility. On the contrary, if more than one vehicle appeared in the vicinity of the intersection, that circumstance might lend additional support to the jury's finding of a "known intersection."

In the case of *Salley* v. *Wagner*, 90 Ohio App., 295, decided by this court and cited by defendant, it is observed in the

opinion, at page 299, that ''we are unable to find that the answer [of the jury] bears any definite relation to any of the factual issues in the case.''  Hence that case does not apply to this second assignment of error.

No error prejudicial to the defendant appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and KERNS, J., concur.