[Cite as *State v. Noble*, 2018-Ohio-3411.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106508**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RICKY L. NOBLE**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-615618-A

**BEFORE:** E.T. Gallagher, P.J., Boyle, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEY FOR APPELLANT**

Kimberly K. Yoder
Kimberly K. Yoder Co., L.P.A.
20525 Center Ridge Road, Suite 133
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Brian D. Kraft
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Ricky Noble, appeals his convictions and raises the following two assignments of error:

> 1. Defendant's convictions relative to Counts one, two, and three were against the manifest weight of the evidence.
>
> 2. Defendant's counsel was ineffective.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} Noble was charged with one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), two counts of aggravated vehicular assault in violation of R.C. 2903.08(A)(2)(b), and one count of failure to stop after an accident in violation of R.C. 4549.02(A). Noble pleaded not guilty to the charges, and the case proceeded to a jury trial.

{¶4} The testimony at trial demonstrated that on October 27, 2016, at approximately 2:00 a.m., a white Dodge van smashed into the rear of a black Acura at the intersection of West 140th Street and Lorain Avenue in Cleveland. Breanna Johns, a passenger in a vehicle across the street from the Acura, witnessed the collision. She testified that the Acura was slowing down to stop at a red light and she believed the white van "flew out" of a gas station parking lot and struck the Acura at high speed. (Tr. 166, 176.) Johns also thought the van's headlights were turned off. (Tr. 167.) Marissa Correa, who was driving the vehicle occupied by Johns, testified that she also noticed the Acura slowing to a stop at the red light.

{¶5} After the collision, Correa and Johns checked on the people involved in the accident. Johns approached the van as the driver exited the vehicle and asked if he was okay. He did not respond, and Johns noticed that his "pupils were very tiny." (Tr. 168.) She explained:

He was just staring like — you know how when somebody faints and wakes up, and they don't know what just happened? And their eyes, they're just staring. That is kind of what it was like. He was just staring like he didn't know what just happened.

(Tr. 168.) Johns identified Noble in court as the driver of the white van that hit the Acura.

{¶6} Correa also observed Noble after the collision. She believed he was intoxicated because he was stumbling and did not seem "bothered too much" by the accident. (Tr. 186.) Correa and Johns both testified that Noble left the scene immediately after the accident, but they stayed and reported their observations to police when they arrived.

{¶7} Jaynese McFarland ("Jaynese") testified that she was driving the Acura at the time of the accident. Barbara McFarland ("Barbara"), Jaynese's mother, was in the front passenger seat while Jazmine McFarland ("Jazmine"), Jereme McFarland ("Jereme"), Sharon Moore, and Deangelo Ward were passengers in the back seat. They were driving southbound on West 140th Street toward Puritas Avenue to drop Moore off at home. As they approached the intersection at the corner of West 140th Street and Lorain, Moore changed her mind about going home, and Jaynese pulled into a BP gas station at the corner to turn around. However, Moore changed her mind again and decided to go home. Therefore, Jaynese exited the gas station and turned back into a southbound lane onto West 140th Street, a short distance from the intersection.

{¶8} Jaynese testified that she never noticed the van behind her car because she never saw headlights in her rearview mirrors. (Tr. 288-289, 291.) She also stated that she was "constantly checking back and forth between my rearview mirrors and looking back." (Tr. 289.) The fact that she never saw the white van in her rearview mirrors led Jaynese to conclude the van's headlights were turned off. The impact of the van hitting the Acura caused the Acura to spin

several times before striking a brick wall that stopped the momentum and brought the car to a stop. (Tr. 292.)

{¶9} Officer Andrew Williams, of the Cleveland Police Department Accident Investigation Unit, investigated the accident. He testified that the damage to the Acura was consistent with high speed collisions he typically sees on the interstate but not on city streets. (Tr. 242.) He explained that although he could not determine the precise speed of the van upon impact, he was certain the van was exceeding 35 miles per hour. (Tr. 245.) The police cited excessive speed as the primary factor causing the accident, but Williams also found no signs, such as the lack of tread marks on the roadway, to indicate that Noble ever applied the brakes before the impact. (Tr. 266, 271.)

{¶10} Officer John Kazimer, a patrol officer with the Cleveland Police Department, testified that he arrived on the scene before EMS arrived. He looked inside the white van for any injured passengers and observed a large amount of blood and a strong smell of alcohol. He described the smell of alcohol as "overpowering * * * like there had been an open drink that had sprayed all over the van." The "whole inside of the van was wet with an unknown substance." (Tr. 429-430.) The state played an audio recording from Officer Kazimer's body camera in which Kazimer observes that it "smells like alcohol" as he is searching inside the van. (Tr. 433.)

{¶11} Officer Kazimer further testified that, based on his experience observing car crashes over the years, he believed the van was traveling "at a very high rate of speed" and that speed was "absolutely" a contributing factor to the crash. (Tr. 440-441.) He concluded the van must have been driving fast based on the amount of damage sustained by the vehicles. (Tr. 446.)

{¶12} Detective Richard Cerny, a detective in the Accident Investigation Unit, conducted the follow-up investigation of the accident. He testified that blood samples found in the van were collected and processed in order to identify the driver. A DNA analyst with the Ohio Bureau of Criminal Investigation testified that DNA extracted from blood found in the van matched a known DNA standard taken from Ricky Noble. (Tr. 314.)

{¶13} The four passengers in the back seat of the Acura sustained injuries in the accident, and Deangelo Ward died as a result of his injuries. Dr. Dan Galita, a deputy medical examiner in the Cuyahoga County Medical Examiner's Office who performed the autopsy on Deangelo Ward, testified that Ward sustained fatal injuries to his head and chest as a result of the accident. Moore testified that she lost consciousness and sustained a fractured skull and broken ribs in the accident. As a result, she now has hearing loss, dizzy spells, and loss of concentration. (Tr. 336-337.) Jazmine also lost consciousness during the accident, suffered partial paralysis for 10 to 12 hours, and now has permanent swelling and stiffness on the right side of her body. (Tr. 357-358.) Jereme testified that he has no memory of the crash and now suffers from neck and back pain. (Tr. 374-375.)

{¶14} Based on the evidence adduced at trial, the jury found Noble guilty on all four counts in the indictment. The court sentenced Noble to 5 years for aggravated vehicular homicide, 12 months on each of the two aggravated vehicular assaults, and 30 months for leaving the scene of accident, to be served concurrently for an aggregate five-year prison term. The court also imposed a Class Two driver's license suspension under R.C. 2903.06(B)(3) for a period of six years. Noble now appeals his convictions.

## II.   Law and Analysis

### A.   Manifest Weight of the Evidence

**{¶15}** In the first assignment of error, Noble argues his aggravated vehicular homicide and aggravated vehicular assault convictions are against the manifest weight of the evidence.

**{¶16}** A challenge to the manifest weight of the evidence attacks the verdict in light of the state's burden of proof beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). When reviewing a claim that the judgment was against the manifest weight of the evidence, we review the entire record, weigh both the evidence and all the reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 48, citing *Thompkins* at 387.

**{¶17}** Noble was convicted of one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), which states, in relevant part:

> No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * in any of the following ways:
>
> *    *    *
>
> (a) Recklessly.

Noble was also convicted of two counts of aggravated vehicular assault in violation of R.C. 2903.08(A)(2)(b), which states,

> No person, while operating or participating in the operation of a motor vehicle, * * * shall cause serious physical harm to another person * * * in any of the following ways:
>
> *    *    *
>
> (a) Recklessly.

**{¶18}** R.C. 2901.22(C), which governs culpable mental states, provides that recklessness occurs when

with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶19} Noble argues that evidence of excessive speed, by itself, is not sufficient to support a finding that he acted recklessly. He cites several cases involving aggravated vehicular assault that have required more than just excessive speed to establish that the driver acted recklessly to support his argument. *State v. Burrell*, 11th Dist. Portage No. 2009-P-0060, 2011-Ohio-2091, ¶ 42; *In re Gilbert*, 12th Dist. Butler No. CA86-10-144, 1987 Ohio App. LEXIS 8876, 7 (Sept. 28, 1987), *Morrow v. Hume*, 131 Ohio St. 319, 323, 3 N.E.2d 39 (1936), and *Akers v. Stirn*, 136 Ohio St. 245, 25 N.E.2d 286 (1940).

{¶20} However, in *State v. Rashad*, 8th Dist. Cuyahoga No. 79051, 2001 Ohio App. LEXIS 4995 (Nov. 8, 2001), this court found that the driver acted recklessly based on facts remarkably similar to the facts of this case. In *Rashad*, the defendant drove 55 m.p.h. through a red light in a 35 m.p.h. zone and collided with another vehicle. The driver never attempted to slow down or stop even though the light was red. After the collision, the driver exited the vehicle and fled the scene. This court found that these acts supported a finding that the driver acted recklessly. *Id*. at *11.

{¶21} There was substantial evidence in this case that Noble was driving the van at a high rate of speed, made no attempt to slow or stop the vehicle before slamming into the Acura, and subsequently fled the scene. Officer Williams testified that he found no evidence of braking on the roadway. Johns and Correa testified that Noble left the scene immediately after the accident

and he was gone when police arrived. There was also testimony from several witnesses that Noble's headlights were turned off when they should have been illuminated.

{¶22} Moreover, there was credible evidence that Noble was intoxicated at the time of the accident. Officer Kazimer testified that the inside of the van was soaked with an unknown substance that smelled of alcohol. Correa testified that Noble appeared to be intoxicated because he was stumbling, and Johns testified that his pupils were tiny. Although there was no direct evidence establishing that Noble consumed alcohol, Correa and Johns's observations provide circumstantial evidence that Noble was intoxicated. Therefore, excessive speed was but one of several contributing factors that caused the accident. And Noble's failure to take any action to avoid the collision demonstrates a complete disregard for the risk that his conduct would cause serious injury to others.

{¶23} Noble nevertheless argues his convictions are against the manifest weight of the evidence because there was conflicting evidence as to how the accident occurred. He suggests that Jaynese may have caused the accident because she admittedly turned around in the gas station shortly before impact and may have pulled out into Noble's path of travel without enough time for him to stop.

{¶24} However, Johns and Correa observed the Acura slowing down to stop at the red light before the van appeared but did not observe the Acura turning around in the gas station. Therefore, Jaynese must have completed the turn in the gas station and was positioned at the red light in a southbound lane before Johns and Correa reached the intersection and before the van blasted onto the scene. Therefore, there was no evidence that Jaynese's turn in the gas station contributed to the accident.

{¶25} Noble further asserts there were no reliable estimates of Noble's speed at the time of the collision. However, a precise determination of speed is not required. The officers who investigated the accident testified that based on their years of experience investigating car crashes, it was obvious, based on the damage caused by the impact, that the van was traveling at a high rate of speed. Moreover, as previously stated, speed was only one contributing factor to the cause of the accident in addition to Noble's failure to apply the brakes and attempt to stop before the impact. Therefore, there was substantial, credible evidence adduced at trial to support Noble's aggravated vehicular homicide and aggravated vehicle assault convictions.

{¶26} The first assignment of error is overruled.

### B. Ineffective Assistance of Counsel

{¶27} In the second assignment of error, Noble argues his Sixth Amendment right to counsel was violated because his trial lawyers were ineffective.

{¶28} To establish a claim for ineffective assistance of counsel, Noble must show that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the defendant must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶29} Noble first argues that one of his trial lawyers violated his Fifth Amendment right to remain silent when he referenced Noble's state of mind during opening statements. Noble contends his lawyer should not have described Noble as "freaking out," panicking, and leaving the scene. He also claims his counsel should not have characterized leaving the scene as "one of the worst decisions of his life."

{¶30} However, it appears counsel was trying to humanize his client and garner sympathy from the jury. In addition to the comments complained of, counsel also told the jury that Noble had "just had his head thrown into his windshield and [was] bleeding, panicked." (Tr. 148.) Defense counsel knew what evidence was going to be presented and needed to offer a story that would portray his client in the most favorable light possible under the circumstances. Just because defense counsel presents the defendant's side of the story during opening statement does not mean the jury expects the defendant to testify. Nor can it be said that the jury would punish the defendant because he exercised his right to remain silent.

{¶31} Moreover, there was overwhelming, uncontroverted evidence that Noble left the scene of the accident. Correa and Johns testified that Noble walked away, and the police were unable to locate the driver of the van when they arrived on the scene. Therefore, Noble cannot demonstrate he was prejudiced by counsel's comments during opening statement that Noble left the scene of the accident.

{¶32} Noble argues his trial counsel was also ineffective because they failed to minimize the suggestion that he was under the influence at the time of the crash. He contends his counsel should have (1) presented alternative reasons why a person would flee the scene of an accident other than being intoxicated, (2) filed a motion in limine to exclude evidence that alcohol was a factor in the accident, and (3) objected to testimony that he appeared to be under the influence and that alcohol was found in his van.

{¶33} However, trial counsel suggested that Noble left the scene because he was stunned as a result of his injuries. Therefore, despite Noble's assertion to the contrary, his trial counsel offered at least one reason for leaving the scene besides Noble's concern for his intoxicated state.

{¶34} With respect to counsel's alleged failure to file a motion in limine, this court has held that the decision to forgo filing a motion in limine falls within the "wide range of professionally competent assistance," particularly when counsel chooses to rely on cross-examination instead. *State v. Doumbas*, 8th Dist. Cuyahoga No. 10077, 2015-Ohio-3026, ¶ 66, citing *Strickland*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶35} Furthermore, it is doubtful that a motion in limine to exclude evidence of alcohol would have been granted. Evidence that Noble appeared to be intoxicated and that alcohol was present in his vehicle is relevant to the determination that Noble recklessly caused the accident. Evid.R. 403 provides that a trial court must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶36} Noble could argue that evidence of alcohol would be unfairly prejudicial to the defense since there was no direct evidence that Noble consumed alcohol. However, circumstantial evidence and direct evidence have the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). Circumstantial evidence is the "'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'" *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 26, quoting *State v. Bentz*, 2 Ohio App.3d 352, 355, 442 N.E.2d 90 (1st Dist.1981), fn. 6.

{¶37} Although no one observed Noble consuming alcohol, Correa testified that he appeared to be intoxicated, and Officer Kazimer detected the presence of alcohol in the van. Although Johns did not use the words "intoxicated," "drunk," or "under the influence," she testified that he was unresponsive to her questions, his pupils were "tiny," and he did not seem to

comprehend what happened during the accident. (Tr. 168.) The jury would decide the weight to be given to these pieces of evidence and whether any inferences should be made regarding intoxication. Certainly evidence of intoxication is prejudicial to the defense. However, the evidence was relevant to the determination of Noble's recklessness, and the probative value of the evidence was not outweighed by the danger of unfair prejudice. Therefore, even if counsel had filed a motion in limine or objected to the evidence, the motion would have been denied, and the objections would have been overruled. Therefore, Noble cannot demonstrate he was prejudiced by counsel's decision not to file a motion in limine or to voice objections to the evidence.

{¶38} Noble further argues that his trial counsel was ineffective because they should have requested funds for an accident reconstructionist, who could have offered alternative theories as to how the accident occurred. He also contends a defense expert would have determined if any helpful video existed in the areas surrounding the crash. He asserts it is possible that the van was traveling southbound within the speed limit on West 140th Street and that the Acura pulled out in front of him without notice after the Acura turned around in the gas station.

{¶39} However, the decision to retain an expert witness is a tactical decision and the results of such a decision are not guaranteed. Defense counsel cross-examined the officers who investigated the crash to make certain points favorable to the defense and to weaken the officers' credibility. And a defense investigation into the existence of video recordings would only be necessary if Detective Cerny lied when he testified that he searched for surveillance videos from surrounding properties and found none. Moreover, Noble fails to demonstrate that the outcome of the trial would have been different had his trial counsel requested funds and retained an accident reconstructionist.

**{¶40}** Finally, Noble argues his trial counsel was ineffective because they failed to object to the state's use of an image from Google Earth during closing argument that was not admitted into evidence. The state used the image to show that neither the camera at the B.P. station, nor the camera at the VFW hall across the street were facing the intersection where the accident occurred. However, despite Noble's assertion to the contrary, defense counsel objected to the use of the image. The objection was overruled because the state's comments with respect to the image were based on evidence. (Tr. 490.) Therefore, Noble's counsel was not ineffective for failing to object to the image. Moreover, Noble fails to demonstrate that trial counsel's alleged deficiencies prejudiced the outcome of the trial.

**{¶41}** The second assignment of error is overruled.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
PATRICIA ANN BLACKMON, J., CONCUR