The STATE of Ohio, Appellee,

v.

WHITAKER, Appellant.

[Cite as *State v. Whitaker* (1996), 111 Ohio App.3d 608.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–285.

Decided May 17, 1996.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *J. Tracy Sniderhan,* Assistant Prosecuting Attorney, for appellee.

*Robert Kaplan* and *Samuel Kaplan,* for appellant.

*Per Curiam.*

This matter is before the court from the Lucas County Common Pleas Court. Appellant, Joe D. Whitaker, appeals his bench trial conviction for aggravated vehicular homicide, a violation of R.C. 2903.06 and an aggravated felony of the third degree. He was sentenced to four to ten years in prison. Appellant asserts the following assignments of error on appeal:

"I. The trial court erred in not granting appellant's motions for judgment of acquittal pursuant to Ohio Rule Crim.P. 29(A) where the state failed to introduce evidence in support of the element of causation as required by R.C. § 2903.06.

"II. The trial court's verdict was contrary to the manifest weight of the evidence.

"III. The trial court erred in finding that appellant's Ohio driving privileges were under suspension at the time of the accident at issue herein relative to R.C. § 2903.06, thereby rendering his sentence nonprobational and not subject to any form of early release."

Appellant's trial commenced on July 15, 1994. Charles L. Byram testified that he was driving his Chevrolet Blazer near the intersection of Secor Road and Gracewood Road on June 23, 1993 at approximately 8:30 in the evening. Specifically, Byram was headed south on Secor Road when he stopped to make a left turn onto Gracewood. Secor Road consists of four lanes plus a turn lane. Byram testified it was a clear day and it was still light outside. A woman in a Honda Accord was stopped on Gracewood preparing to turn left onto Secor Road. Byram waited in the turn lane for a vehicle traveling north on Secor Road to pass him. Byram then began his left turn. He saw another vehicle traveling north on Secor Road. As he made his turn onto Gracewood, he noticed that the northbound vehicle, a late model Pontiac Bonneville driven by appellant, was traveling faster than he had originally judged so he hurried through the intersection. At the same time, he saw that the woman in the Honda Accord had begun to make her left turn onto southbound Secor Road. Byram remembered being concerned that she would not get across the intersection without colliding with the northbound Bonneville. As Byram completed his turn onto Gracewood, he heard the sound of screeching brakes and a collision which killed Susan Axe, the driver of the Honda Accord. Byram estimated appellant's speed to be twenty to twenty-five miles over the posted speed limit of forty-five m.p.h.

Toledo police officer Michael J. Palicki testified that he was called to the scene shortly after the accident on June 23, 1993. When he arrived at approximately 8:30 p.m., it was still light outside. He testified that it had been a clear, sunny day. The portion of Secor Road involved in the accident was flat and level. The speed limit was forty-five m.p.h. and the pavement was dry. Officer Palicki filled out a report indicating that the accident was caused when the Honda Accord pulled out in front of the Pontiac Bonneville. Palicki speculated in the report that Axe's view from the Honda may have been obstructed by the Chevrolet Blazer. He estimated, based on the physical evidence at the scene as well as witness accounts, that appellant was traveling approximately sixty m.p.h.

Dr. David Uhrich, a physics professor, testified that he investigated the accident scene. Measuring the distance between the point of impact to the area of final rest and including the weight of the two vehicles, Uhrich testified that he was able to calculate their preaccident speed. He estimated that the Honda had been traveling thirteen to fifteen m.p.h. and the Bonneville had been traveling between seventy-three and eighty-three m.p.h. and that the preimpact speed of

the Bonneville, that is the speed of the Bonneville the instant before impact as brakes are applied, was between fifty-seven m.p.h. and sixty-six m.p.h.[1]

In his first assignment of error, appellant contends that the court erred in denying his motion for acquittal. Specifically, appellant contends that the state failed to produce evidence of recklessness.

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

The elements of R.C. 2903.06, aggravated vehicular homicide, are as follows:

"(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another."

"Recklessly" is defined in R.C. 2901.22(C) as follows:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

The Twelfth District Court of Appeals addressed the same issue raised in this assignment of error in *In re Gilbert* (Sept. 28, 1987), Butler App. No. A86–10–144, unreported, 1987 WL 17709. Gilbert was charged with delinquency for driving under the influence of alcohol and aggravated vehicular homicide. The court ultimately dismissed the driving-under-the-influence charge. The evidence showed that Gilbert was driving into an intersection with a green light in his favor when he collided with another vehicle attempting to turn left in his path. A passenger in the left-turning vehicle was killed. Eight witnesses testified that Gilbert had been traveling ten to thirty-five miles over the posted speed limit of forty-five m.p.h. when he collided with the other vehicle. On appeal, Gilbert's delinquency finding was reversed. The court stated:

"Under these circumstances, we find the evidence insufficient to support a finding of criminal recklessness. The only evidence of recklessness relating to

1. Appellant contends that the court struck the testimony of the expert based on the fact that he used photographs not in evidence to reach his conclusion. However, the record demonstrates that the expert also used the police photos that were admitted into evidence. The only matter stricken was any calculation of speed based on the skid marks and yaw marks on the pictures not admitted into evidence.

the scene of the collision concerned appellant's speed. In *Morrow v. Hume* (1936), 131 Ohio St. 319 [6 O.O. 21, 3 N.E.2d 39] and *Akers v. Stirn* (1940), 136 Ohio St. 245 [16 O.O. 335, 25 N.E.2d 286], the Ohio Supreme Court held that proof of excessive speed in the operation of an automobile is not itself sufficient to constitute wantonness. 'Wantonness' has been defined as follows: '[A] wanton act is an act done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, * * * with full knowledge of the surrounding circumstances, recklessly and inexcusably disregards the rights of other motorists, his conduct may be characterized as wanton. (Citations omitted). *State v. Earlenbaugh* (1985), 18 Ohio St.3d 19, 21–22 [18 OBR 16, 18, 479 N.E.2d 846, 849].' In *Earlenbaugh,* the supreme court noted that this definition of wantonness was 'substantially similar in wording and effectively identical in meaning' to the definition of recklessness contained in R.C. 2901.22. *Id.* at 22 [18 OBR at 18, 479 N.E.2d at 849]. Therefore, following the rationale of *Morrow* and *Akers, supra,* proof of excessive speed alone is also insufficient to constitute criminal recklessness."

The court concluded its analysis by citing cases in which courts have required more than just evidence of excessive speed to sustain a conviction for aggravated vehicular homicide:

"*State v. Caudill* (1983), 11 Ohio App.3d 252 [11 OBR 379, 464 N.E.2d 605] (speed, erratic driving, driving under the influence); *State v. Stinson* (1984), 21 Ohio App.3d 14 [21 OBR 15, 486 N.E.2d 831] (speed, wet pavement, curving road, car in disrepair, driving under the influence); *State v. Purdy* (Apr. 6, 1987), Butler App. No. CA86–06–078, unreported [1987 WL 9074] (speed, erratic driving, driving under the influence); *State v. Jones* (Aug. 31, 1984), Clermont App. No. CA84–02–017 [1984 WL 14085] (speed, loss of control)." See, also, *State v. Thomas* (June 13, 1994), Butler App. No. 93–03–046, unreported, 1994 WL 266546 (motorist traveling one hundred m.p.h., tailgating and bumping car ahead in a partially residential area with a hill crest preceding intersection where collision occurred).[2]

Based on our review of the evidence contained in the record as to appellant's speed and all of the surrounding circumstances, we cannot hold beyond a reasonable doubt that the appellant acted with full knowledge of the surrounding

---

2. This is not to say that speeding alone can never amount to criminal recklessness. "[W]hen the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness." *Akers v. Stirn* (1940), 136 Ohio St. 245, 249–250, 16 O.O. 335, 337, 25 N.E.2d 286, 289.

circumstances so as to constitute reckless operation. The testimony demonstrates that the collision occurred on a four-lane, dry roadway while lighting conditions were good. The evidence on speed varied from fifteen to thirty-eight m.p.h. over the posted speed limit of forty-five m.p.h. The evidence further indicates that the sports utility vehicle operated by Charles Byram had turned in front of appellant's vehicle and may have blocked appellant's view of the vehicle operated by the deceased. As outlined earlier, to constitute recklessness, one must act with full knowledge of the existing circumstances. However, with respect to recklessness, which by definition requires that the appellant acted "with full knowledge of the circumstances," the evidence is nonexistent in this case. Based on the foregoing law and evidence, we conclude that the state failed to prove beyond a reasonable doubt the element of recklessness.

■■ Nevertheless, this does not end our review. In finding appellant guilty of aggravated vehicular homicide, the trial court necessarily found that all the elements of the lesser included offenses were present. *State v. Waszily* (1995), 105 Ohio App.3d 510, 664 N.E.2d 600, citing *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. Vehicular homicide, a violation of R.C. 2903.07 and a misdemeanor of the first degree, is a lesser included offense of aggravated vehicular homicide. The offense of vehicular homicide reads as follows:

"(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall negligently cause the death of another."

Aggravated vehicular homicide requires the offender to recklessly cause the death of another, while vehicular homicide requires the offender to negligently cause the death of another. "Negligently" is defined in R.C. 2901.22 as follows:

"(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

■ Based on a review of the evidence before the court, we conclude that appellant, in driving over the speed limit, acted negligently in causing the death of Susan Axe. That is, appellant acted with a substantial lack of due care and failed to perceive the risk attendant under the circumstances. Appellant's first assignment of error is partially sustained. Pursuant to App.R. 12(B), the judgment of the Lucas County Court of Common Pleas is hereby modified to reflect a conviction for vehicular homicide, a violation of R.C. 2903.07.

Appellant's second assignment of error, in which he argues that the conviction is against the manifest weight of the evidence is rendered moot and, therefore, not well taken.

In his third assignment of error, appellant contends that the court erred in concluding the offense of which he was convicted was nonprobational.

R.C. 2903.06(C), aggravated vehicular homicide, states:

"[I]f in the commission of the offense the offender was driving under suspension or operating a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, he shall not be eligible for shock probation, probation, or shock parole pursuant to section 2947.061, 2951.02, or 2967.31 of the Revised Code."

We will consider this assignment of error in that the offense of vehicular homicide, a violation of R.C. 2903.07, contains an identical provision.

In June 1993, appellant's driving privileges had been cancelled pursuant to R.C. 4507.168, which read:

"(A) If a person who has a current valid Ohio driver's or commercial driver's license is charged with a violation of sections 4511.01 to 4511.76, section 4511.84, sections 4513.01 to 4513.65, or sections 4549.01 to 4549.65 of the Revised Code that is classified as a misdemeanor of the first, second, third, or fourth degree and either *fails to appear in court at the required time and place to answer the charge* or pleads guilty to or is found guilty of the violation and fails within the time allowed by the court to pay the fine imposed by the court, *the court shall declare the forfeiture of the person's license.* Thirty days after the declaration of *forfeiture*, the court shall forward the person's license, if it is in the possession of the court, or a copy of the declaration of *forfeiture*, to the registrar of motor vehicles. The registrar shall cancel the person's driver's or commercial driver's license, send written notification to the person of the cancellation at his last known address and, if the person is in possession of the license, order him to surrender his driver's or commercial driver's license to the registrar within forty-eight hours. No valid driver's or commercial driver's license shall be granted to the person after the cancellation, unless the court having jurisdiction of the offense that led to the cancellation orders the registrar to reissue the license to its original date of expiration without additional fee or to permit the person to apply for a new license. The court shall so order the registrar if the person, after having failed to appear in court at the required time and place to answer the charge or after having pleaded guilty to or been found guilty of the violation and having failed within the time allowed by the court to pay the fine imposed by the court, thereafter appears to answer the charge and pays any fine imposed by the court or pays the fine originally imposed by the court.

"(B) *The period of license suspension imposed pursuant to division (A) of this section* is independent of any other period of license suspension that the court having jurisdiction over the offense may impose, and the period of license suspension imposed pursuant to that division shall remain in effect until the person pays any fine imposed by the court relative to the offense." (Emphasis added.)

Appellant argues that the specification paragraph proscribing probation found in both R.C. 2903.06 and 2903.07 does not include the loss of driving privileges pursuant to the above-quoted section of the Revised Code. Appellant distinguishes between license "forfeiture" found in R.C. 4507.168 and license "suspension." "Forfeiture" is defined in Webster's Third New International Dictionary (1986) 891, as "the loss of property or money on account of one's breach of [a] * * * legal obligation." "Suspension" is defined as *"temporary* forced withdrawal from the exercise of office, powers, prerogatives, privileges." (Emphasis added.) *Id.* at 2303. As used in the Ohio Revised Code, these two words carry distinct consequences. Under R.C. 4507.168, a driver must have his forfeited license privileges reinstated once he appears in court and/or pays a fine. Clearly, appellant argues, the purpose of R.C. 4507.168 is to encourage persons to appear in court. License suspensions under the remaining sections of R.C. Chapter 4507 are meant as a penalty for poor driving and involve a definite period of time. Following the termination of the suspension period, a driver must pay a reinstatement fee to have his privileges reinstated, be retested and show proof of financial responsibility.

Absent clear contrary legislative intent, words in the statute are to be read in their given context and construed according to their plain and ordinary meaning. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 137, 522 N.E.2d 477, 479–480.

R.C. 2903.06(C) and 2903.07(C) specifically state that the offenses are rendered nonprobational if the offender committed the offense while driving under suspension. The legislature specifically refers to the cancellation of a license pursuant to R.C. 4507.168(A) as a *suspension* in R.C. 4507.168(B). While appellant makes an interesting argument in support of this assignment of error, this court is without authority to ignore the plain meaning of R.C. 2903.06(C) and 2903.07(C) under the pretense of statutory interpretation. *State v. Krutz* (1986), 28 Ohio St.3d 36, 38, 28 OBR 96, 97–98, 502 N.E.2d 210, 211–212. It is undisputed that appellant did not have the right to drive at the time of the accident, and the intent of the legislature is clear under these circumstances. Accordingly, appellant's third assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed as modified. This cause is remanded to said court for resentencing pursuant to R.C. 2903.07. Costs are to be divided equally between the parties.

*Judgment accordingly.*

GLASSER, J., concurs as to Assignments of Error Nos. 1 and 3.

ABOOD, J., concurs in judgment only as to Assignment of Error No. 3 and dissents as to Assignment of Error No. 1.

MELVIN L. RESNICK, P.J., concurs as to Assignment of Error No. 1 and dissents as to Assignment of Error No. 3.

MELVIN L. RESNICK, Presiding Judge, dissenting.

I dissent from the majority's conclusion that R.C. 2903.06(C) and 2903.07(C) includes the loss of driving privileges pursuant to R.C. 4507.168.

The purpose of statutory construction is to give effect to the legislature's intent. *Featzka v. Millcraft Paper Co.* (1980), 62 Ohio St.2d 245, 16 O.O.3d 280, 405 N.E.2d 264. Absent clear contrary legislative intent, words in the statute are to be read in their given context and construed according to their plain and ordinary meaning. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 137, 522 N.E.2d 477, 479–480. "When construing an ambiguous statute, the court is required to interpret the language strictly against the state and liberally in favor of the accused." *State v. Cole* (1994), 94 Ohio App.3d 629, 638, 641 N.E.2d 732, 738, citing R.C. 2901.04.

The specification paragraph of R.C. 2903.06 and 2903.07 is not ambiguous. If an offender commits one of these offenses while his driver's license is under suspension, the offense is rendered nonprobational.

At the time of this offense, appellant had lost his driving privileges pursuant to R.C. 4507.168(A). The statute refers to the taking of a driver's license as a "forfeiture." In section (B) of the same statute, the legislature uses the word "suspension" instead of "forfeiture." Moreover, in section (B) of R.C. 4507.168, the legislature specifically states that the suspension under division (A) is *independent* of any other period of license suspension that the court may impose as a penalty for an offense for which the court has jurisdiction. Thus, the legislature has itself distinguished violations under R.C. 4507.168 and other violations where true, definite suspensions are authorized as punishment for traffic offenses. The failure to appear in court because of a traffic ticket is not a traffic offense, nor is the failure to pay a fine. Thus, if R.C. 4507.168(A) is truly independent, it can hardly be argued that this statute can be used for specification purposes. The interchangeable use of the words "forfeiture" and "suspension" renders R.C. 4507.168 ambiguous. Construing R.C. 4507.168 strictly

against the state and in favor of appellant, I would sustain appellant's third assignment of error by concluding that appellant's license was not under "suspension" as that word is used in R.C. 2903.06(C) and 2903.07(C).