DECISION.
The instant appeals have been consolidated for purposes of argument and decision. In appeal number C-981006, defendant-appellant, Christopher Fitzwater, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of aggravated vehicular homicide. In appeal number C-981005, he appeals the trial court's judgment finding him in violation of the terms of his previously imposed community-control sanction,[1]
based upon the aggravated-vehicular-homicide conviction.[2]
Fitzwater advances a total of seven assignments of error in support of these timely appeals. Finding none of the assignments to have merit, we affirm the judgments of the lower court.
APPEAL C-981006: AGGRAVATED VEHICULAR HOMICIDE
On August 31, 1998, at approximately 2:00 p.m., Fitzwater was operating a 1994 Chevrolet Camaro in the 2600 block of Central Parkway in Cincinnati. Witnesses testified at trial that Fitzwater appeared to be impatient and was weaving in and out of traffic at a high rate of speed. At that time, a pedestrian, twenty-six-year-old Charles Cobb, was attempting to cross Central Parkway.[3] As Cobb was doing so, Fitzwater changed from the center lane to the left lane to pass a slower vehicle. Fitzwater drove the Camaro across the double yellow lines and struck Cobb. As a result of the collision, Mr. Cobb received serious injuries and died shortly thereafter.
Fitzwater told other drivers who had stopped to assist Cobb that he was proceeding at only forty-five miles per hour at the time of impact. However, a Cincinnati police officer trained in accident reconstruction testified at trial that Fitzwater was traveling at seventy-four miles per hour.[4] Also, a deputy Hamilton County coroner, Dr. Dorothy Emma Dean, testified that Cobb's injuries were consistent with being struck by a vehicle traveling at a high speed. She further opined that the cause of Mr. Cobb's death was a blunt impact to the head and neck.
At the conclusion of all of the evidence, the jury returned a verdict finding Fitzwater guilty of aggravated vehicular homicide. We now turn to Fitzwater's assignments of error.
We first address Fitzwater's second, third and fourth assignments of error. He contends in these assignments that the trial court erred in entering a conviction where the verdict was based upon insufficient evidence and was contrary to the weight of the evidence, and that the court erred in denying his motion for acquittal pursuant to Crim.R. 29. Fitzwater argues the assignments together, and we address them in like fashion.
To reverse a trial court's decision as against the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[5] In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt."[6] The standard of review for the denial of a Crim.R. 29 motion is the same as the standard of review for sufficiency.[7]
R.C. 2903.06, governing aggravated vehicular homicide, provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall recklessly cause the death of another * * *." The statute defining the culpable mental state of recklessness, R.C. 2901.22(C), provides the following:
A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
Fitzwater's argument with respect to the weight and sufficiency of the evidence focuses on the state's alleged failure to prove that he acted recklessly. Fitzwater argues, in support of these assignments, that proof of excessive speed alone is insufficient to demonstrate recklessness beyond a reasonable doubt.[8]
While we recognize that courts in numerous cases have held that, in general, speed alone does not constitute recklessness, those cases are not dispositive of the instant appeal. In the case at bar, the state presented the testimony of Valerie Henderson and Alice Sneed, who stated that, in addition to driving at a high rate of speed, Fitzwater repeatedly swerved in and out of traffic, heedlessly drove his automobile in front of other vehicles, and crossed the double yellow lines immediately prior to striking Cobb.[9] Thus, the state presented ample evidence of conduct other than excessive speed that could have been deemed reckless by the jury. Based upon that evidence, we hold that the state presented sufficient evidence that Fitzwater acted recklessly and that the jury did not lose its way when it found him guilty under R.C. 2903.06.
Fitzwater also argues that the state failed to prove that his reckless conduct was the cause of Cobb's death. Specifically, he cites evidence that, even had he been operating his vehicle within the posted speed limit of thirty-five miles per hour, the impact of the vehicle would have resulted in Cobb's death.
We are not persuaded by this argument. Even if it were conclusively established that an impact at a lesser speed would have caused Cobb's death, the fact remains that Fitzwater's speed and erratic driving caused the death in that Fitzwater was unable to take evasive action. The jury could have properly inferred that, had Fitzwater been in control of the vehicle rather than swerving and travelling seventy-four miles per hour, the death would have been averted. Thus, the contention that the death would have occurred at a lesser speed does not convince us that the jury's verdict was contrary to the evidence. Accordingly, the second, third, and fourth assignments of error are overruled.
In his first assignment of error, Fitzwater complains that the lower court erred by admitting evidence of other criminal acts, in violation of Evid.R. 404. We hold that no prejudice was visited upon Fitzwater in this respect.
The record discloses that, during its case-in-chief, the state elicited testimony that, approximately two hours before and two miles away from the events on Central Parkway, Fitzwater had left a gas station in the Camaro in a reckless manner. According to Jim Boston, Fitzwater accelerated away from the station, squealing the Camaro's tires to the extent that the automobile was sliding sideways.
Initially, Fitzwater objected to this testimony, but he immediately withdrew that objection. It was not until during the redirect examination of Mr. Boston by the state that Fitzwater renewed his objection to this testimony, but, at that point, it had already been presented to the jury. Therefore, Fitzwater failed to properly preserve the claim of error for appellate review, and we review this assignment under the plain-error standard of review.[10] An appellate court will not reverse under the plain-error doctrine unless "but for the error, the outcome of the trial clearly would have been otherwise."[11]
In the instant case, we find no reversible error. We agree with Fitzwater that the admission of Mr. Boston's testimony, after timely objection, would have been improvident. However, as previously discussed, the state produced ample evidence of Fitzwater's recklessness immediately preceding the collision via the testimony of Sneed and Henderson. In light of that evidence, we cannot say that the outcome clearly would have been different had the Boston testimony been excluded. The first assignment of error is accordingly overruled.
In his fifth assignment of error, Fitzwater maintains that the lower court erred by permanently revoking his driver's license. R.C. 4507.16(A)(1)(b) authorizes a trial court to revoke a person's operator's license if the person is convicted of "[a]ny crime punishable as a felony under the motor vehicle laws of this state or any other felony in the commission of which a motor vehicle is used." The revocation of the defendant's license is a matter entrusted to the discretion of the trial court.[12] In the case at bar, Fitzwater's conviction for aggravated vehicular homicide was a proper basis for the revocation of his operator's license, and we find no abuse of discretion on the part of the trial court. The fifth assignment of error is therefore overruled.
In his sixth and final assignment of error under this appeal, Fitzwater asserts that the lower court erred by imposing the maximum term of incarceration. This assignment is not well taken.
To impose the maximum term of incarceration, the trial court must find one of the factors enumerated in R.C. 2929.14(C) to be applicable. In the instant case, the court found that Fitzwater had committed "the worst form of the offense." Our review of the record convinces us that the trial court was correct. Fitzwater was operating his vehicle at seventy-four miles per hour on a busy urban thoroughfare in a manner that showed no regard for the safety of pedestrians or other motorists. The result of this conduct was a senseless death. Under these circumstances, the trial court was justified in imposing the maximum term of incarceration,[13] and we hereby overrule the sixth assignment of error.
APPEAL C-981005: PROBATION VIOLATION
The issue in this appeal is whether the lower court failed to provide Fitzwater with a meaningful hearing on the matter of his probation violation so as to deny him due process of law. Fitzwater contends that the lower denied him a hearing and assigns that denial as error. The assignment is not well taken.
The record discloses that the lower court proceeded with sentencing immediately following the jury's guilty verdict in the aggravated-vehicular-homicide trial. At that time, the lower court raised the matter of the probation violation. While trial counsel acknowledged that he also represented Fitzwater on the probation violation, he orally moved the court to continue the sentencing hearing for one week so that he could consult Fitzwater on that matter. The lower court declined to continue the matter and proceeded to find that Fitzwater was in violation of his community control. The court then sentenced Fitzwater to one year's incarceration.
Fitzwater maintains that the lower court prejudicially denied him notice of the violation and an opportunity to present a defense to it. The record does not support Fitzwater's contention.
Crim.R. 32.3, governing the revocation of community-control status, provides that "[t]he court shall not impose a prison term for the violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed." In emphasizing the flexible nature of due-process guarantees, the United States Supreme Court has stated the following with respect to the revocation of something akin to community-control sanctions:
What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion (to revoke) will be informed by an accurate knowledge of the parolee's behavior.[14]
This general guideline has been adopted by Ohio courts in determining what constitutes due process in the context of probation or community-control revocation proceedings.[15]
In the case at bar, the record reveals that Fitzwater was given the proper notice of the alleged violation and an adequate opportunity to be heard concerning the allegations. On October 20, 1998, a complaint alleging that Fitzwater was in violation of the conditions of community control was placed of record. The complaint was based, in part, on the fact that Fitzwater had been indicted for aggravated vehicular homicide. The complaint further stated that Fitzwater was in custody and that a probable-cause hearing was scheduled for October 29, 1998. On October 29, 1998, an entry was journalized continuing the probable-cause hearing to November 23, 1998, at Fitzwater's request.[16] Thus, Fitzwater's contention on appeal that counsel did not have time to speak to him about the violation or to otherwise prepare for the hearing is belied by the fact that notice of the violation had been provided to Fitzwater well before the ultimate date of the revocation hearing
At the hearing itself, the trial court took proper steps to ensure that the revocation was based upon an accurate knowledge of Fitzwater's conduct. First, the basis of the violation was the aggravated-vehicular-homicide indictment, the trial of which had just been presided over by the lower court.[17] And while Fitzwater's request for a continuance was denied, his counsel was given a full opportunity to speak in mitigation of sentence and to offer any reason that Fitzwater should have remained on community control. Fitzwater did not proffer any defense to the alleged violation and has not otherwise demonstrated that he was prejudiced by the denial of the continuance. Accordingly, we hold that lower court did not err by proceeding on the community-control violation or in sentencing Fitzwater for the violation. The assignment of error is overruled, and the judgment of the lower court in each of these consolidated appeals is affirmed.
Judgments affirmed.
 Hildebrandt, P.J., Gorman and Sundermann, JJ.
[1] On May 29, 1998, Fitzwater was convicted of receiving stolen property, after a guilty plea. The lower court sentenced him to three years of community control with intensive supervision.
[2] Fitzwater was sentenced to serve five years of incarceration on the aggravated-vehicular-homicide conviction, consecutive to one year of incarceration on the probation violation.
[3] Evidence was presented that Central Parkway runs from north to south at this location. There are three northbound lanes and two southbound lanes. Cobb was attempting to cross Central Parkway from east to west.
[4] The record discloses that the Camaro left 262 feet of skid marks as a result of Fitzwater's braking after impact.
[5] State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546.
[6] State v. Waddy (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 815.
[7] State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[8] See State v. Whitaker (1996), 111 Ohio App.3d 608,676 N.E.2d 1189, citing Akers v. Stirn (1940), 136 Ohio St. 245,25 N.E.2d 286.
[9] Fitzwater emphasizes that, according to the state's opinion evidence as offered through the testimony of the officer, excessive speed was the cause of Cobb's death. Nonetheless, the jury was presented with evidence from which it could have properly inferred that the swerving and other erratic driving immediately prior to the collision also caused the death. See State v. Napier
(Aug. 28, 1998), Hamilton App. No. C-970383, unreported.
[10] See State v. Scherban (May 29, 1996), Medina App. No. 2461-M, unreported.
[11] State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus; State v. Campbell (1994), 69 Ohio St.3d 38,41, 630 N.E.2d 339, 345.
[12] State v. White (1987), 29 Ohio St.3d 39, 505 N.E.2d 632, syllabus.
[13] For the same reasons, the sentence imposed by the trial court was not so disproportionate to Fitzwater's conduct as to "shock the sense of justice of the community." See State v. Chaffin
(1972), 30 Ohio St.2d 13, 282 N.E.2d 46, paragraph three of the syllabus. We therefore reject the argument that the sentence constituted cruel and unusual punishment under the Ohio and United States Constitutions.
[14] Morrissey v. Brewer (1972), 408 U.S. 471, 484, 92 S.Ct. 2602.
[15] See, e.g., State v. Maupins (Apr. 20, 1989), Montgomery App. No. 10739, unreported.
[16] November 23, 1998, was the first day of the aggravated-vehicular-homicide trial.
[17] Fitzwater emphasizes that he was not given the opportunity to enter a plea to the violation. We find no due process violation in the lack of a plea being entered, because the community-control-violation proceedings did not constitute a new criminal charge. In any event, the trial court properly made a finding that Fitzwater had violated the terms of community control, as the new conviction for aggravated vehicular homicide was a matter of record.