DECISION
{¶ 1} Appellant, Joe V. Nguyen, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated vehicular homicide and sets forth the following assignment of error:
 {¶ 2} "The court's verdict was not supported by sufficient credible evidence, thereby denying Appellant due process protections under the state and federal Constitutions."
 {¶ 3} On October 6, 2001, appellant, Saravuth Lang and Davie Thong left the Palace Bowling Lanes at Cleveland Avenue and State Route 161, and entered appellant's vehicle, a Honda Prelude. Appellant was driving, Lang was the front seat passenger and Thong was in the backseat. The three drove south on Cleveland Avenue, which is a four-lane road with a posted speed limit of 35 m.p.h. Just north of the accident scene there is a curve in the road. The area at the curve where the accident occurred is not well-lit. Witnesses testified that there was light rain that night and appellant told the police he had his windshield wipers on high.
 {¶ 4} Lang testified that he and Thong began teasing appellant that his car was slow and small. In response, appellant increased his speed and, when the passengers protested, turned the music up on the radio and continued to increase his speed. Just before the accident, a Mifflin Township police officer made a visual estimate of appellant's speed as he drove south on Cleveland Avenue as being 80 to 100 m.p.h. Lang testified:
 {¶ 5} "Q. Did anybody in the car ever ask him to stop or slow down?
 {¶ 6} "A. Yes.
 {¶ 7} "Q. Who was that?
 {¶ 8} "A. Me and Davie.
 {¶ 9} "Q. Did he do that?
 {¶ 10} "A. The music was up loud. I think we — First time we told him he did, but then he turned back up the music.
 {¶ 11} "Q. Did you get an idea how fast he was going?
 {¶ 12} "A. I was sitting down. I was looking at him. The music was up. I am screaming at him, and Davie was yelling stop, and I looked at the gauge on the car, and he was going like between 100 and 110.
 {¶ 13} "* * *
 {¶ 14} "Q. And right prior to the accident occurring, how fast do you think he was going?
 {¶ 15} "* * *
 {¶ 16} "A. One hundred and five, 110." (Tr. at 42-43.)
 {¶ 17} As appellant approached the curve in the road, he lost control of his vehicle, crossed both northbound lanes of traffic, knocked over a fire hydrant, hit a telephone pole and ran into a fence. As the result of the impact, the car was split in two, Thong was thrown from the car and pronounced dead at the scene as a result of blunt trauma to his head, chest and pelvis.
 {¶ 18} Appellant was indicted on one count of aggravated vehicular homicide and waived his right to a jury trial. The only issue at trial was whether appellant's conduct was reckless. The trial court discounted appellant's statement to the paramedics that his speed was 55 m.p.h., finding his speed to be closer to 100 m.p.h. The trial court found appellant guilty of the charge, sentenced him to one year in prison and suspended his driver's license for three years.
 {¶ 19} In his sole assignment of error, appellant argues the evidence is insufficient to find his conduct was reckless. Although not specifically raised in the assignment of error, appellant also argues the conviction is against the manifest weight of the evidence.
 {¶ 20} In State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387,389, the Ohio Supreme Court defined manifest weight of the evidence and set forth the role of an appellate court in reviewing a verdict to determine whether the verdict is supported by the manifest weight of the evidence as follows:
 {¶ 21} "* * * The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 {¶ 22} "With respect to sufficiency of the evidence, ' "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. * * *
 {¶ 23} "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)], at 1594.
 {¶ 24} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982), 457 U.S. 31], 42, 102 S.Ct. at 2218,72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
 {¶ 25} R.C. 2903.06 provides:
 {¶ 26} "(A) No person, while operating * * * a motor vehicle, * * * shall cause the death of another * * * in any of the following ways:
 {¶ 27} "* * *
 {¶ 28} "(2) Recklessly[.]"
 {¶ 29} "Recklessness" is defined in R.C. 2901.22(C) as:
 {¶ 30} "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 31} Appellant argues that, in Ohio, speed alone is insufficient to establish recklessness and relies on State v. Whitaker (1996), 111 Ohio App.3d 608. In Whitaker, the defendant was driving 15 to 38 m.p.h. over the posted speed limit of 45 m.p.h., on a four-lane highway with good lighting conditions. Another vehicle made a left turn in front of Whitaker and the court found the car turning left might have blocked Whitaker's view of the vehicle driven by decedent. The court in Whitaker relied on Akers v. Stirn (1940), 136 Ohio St. 245, at paragraph one of the syllabus, which held:
 {¶ 32} "Excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness. (Morrow v. Hume, Admx., 131 Ohio St. 319, approved and followed.)"
 {¶ 33} The court, in Akers, continued, at 249-250:
 {¶ 34} "This court has held that excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness. Morrow v. Hume, Admx., 131 Ohio St. 319, 3 N.E.2d 39. In that case, on page 324, this court said `wantonness can never be predicated upon speed alone; but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness,' * * *"[1]
 {¶ 35} In State v. Wasson, Franklin App. No. 02AP-211, 2002-Ohio-5963, at ¶ 29, this court stated:
 {¶ 36} "With regard to appellant's first assertion that his speeding gives rise only to a negligence finding (and, therefore, an acquittal), we cannot accept such a blanket assertion. To accept this proposition would be tantamount to concluding that speeding and recklessness are, as a matter of law, necessarily mutually exclusive. Excessive speed can indeed rise to the level of recklessness, particularly given the facts of this case. * * *"
 {¶ 37} In this case, there was evidence that the speed of appellant's vehicle was 100 to 110 m.p.h., or more than three times the posted speed limit, in itself sufficient to show recklessness. Further, there was evidence of other unusually dangerous conditions, in that appellant was driving on a wet, poorly lit road, and ignored the pleas of his passengers to slow down. Thus, there was evidence of acts on appellant's part, in addition to his excessive speed, which were proof of recklessness. Thus, there was sufficient evidence of recklessness and the trial court's finding was not against the manifest weight of the evidence.
 {¶ 38} Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and LAZARUS, J., concur.
[1] Citing State v. Earlenbaugh (1985), 18 Ohio St.3d 19, at 21-22, the court in Whitaker noted the definition of wantonness was effectively identical to that of recklessness as defined in R.C. 2901.22.