[Cite as *State v. Roberts*, 2012-Ohio-4715.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97709**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HERSCHEL ROBERTS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-538472

**BEFORE:** Celebrezze, P.J., Jones, J., and Cooney, J.

**RELEASED AND JOURNALIZED:** October 11, 2012

**ATTORNEY FOR APPELLANT**

Matthew C. Bangerter
1360 West 9th Street
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Kevin R. Filiatraut
          Kerry A. Sowul
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} This appeal by appellant Herschel Roberts stems from the tragic death of Sylvia Bingham and appellant's resultant conviction for aggravated vehicular homicide. Appellant claims his conviction cannot stand because it is against the manifest weight of the evidence, is unsupported by sufficient evidence, and also that his sentence is excessive. After a thorough review of the record and law, we affirm appellant's conviction and sentence.

## I. Factual and Procedural History

{¶2} On the morning of September 15, 2009, appellant was driving a large box truck making deliveries for his employer. He was traveling east on Prospect Avenue in Cleveland, Ohio. A young woman, Sylvia Bingham, was also traveling east on Prospect on her bicycle. The two stopped at a red light at the intersection of East 21st Street and Prospect. Witnesses testified the bike was stopped somewhere close to the truck or just behind it. As the light turned green, traffic began to move, and appellant turned right onto East 21st Street. Bingham was run over by the dual rear wheels of the box truck about eight feet into the intersection. She died shortly thereafter. Appellant continued south on East 21st Street, apparently unaware of the tragic events left behind.

{¶3} Bingham's death was witnessed by three individuals who came forward and provided statements to police. Jonathan Olenski, a delivery driver for an auto parts supplier, was behind appellant's truck and observed Bingham stop her bike just behind

appellant's truck off to the right, next to the curb. He stated he did not notice if the truck used its turn signal. He testified that once the light turned green, he observed appellant's truck move forward and "bow out left" as it proceeded through the intersection. He then observed it turn right and strike Bingham as she tried to stop or avoid the collision, but was unable to because of the condition of the pavement at the intersection. Olenski testified the truck did not stop, but continued to accelerate down East 21st Street. He followed the truck and was able to get the license plate number, then returned to the intersection and waited for the police.

{¶4} Paul Silvestro, a project coordinator for a large telecommunications and cable company, was walking to a meeting. He was reviewing some notes for the meeting as he waited at the crosswalk on the north side of Prospect. He heard a metallic scraping sound and looked up to see appellant's truck speeding away from a crumpled bike and a woman laying in the road. He ran to the woman and called 911. He testified he did not see the accident, but was able to identify the truck.

{¶5} Finally, Sheena Durham was on her way to class at Cleveland State University. She parked at the parking garage just south of Prospect on East 21st Street. She was waiting just south of the intersection and observed appellant's truck and Bingham stopped at the intersection. She testified she noticed Bingham because of the glint from her reflectors. She did not know whether appellant used his turn signal. When asked about appellant's turn signal, she testified, "I wasn't looking so I didn't pay attention to that." She stated she was not paying attention until she heard the enormous

roar of a large engine. She looked up to see appellant's truck accelerating away from the intersection as if he was going to continue straight on Prospect, but it then turned right midway through the intersection and accelerated rapidly down East 21st Street. She did not see the truck strike Bingham because the turning truck blocked her view. She noted that the engine roar was not typical city traffic noise and that the truck reached approximately 40 miles per hour by the time it reached Carnegie Avenue and made a left turn. She then saw Bingham laying in the road and realized what had occurred.

{¶6} As a result of the accident, Bingham suffered fatal injuries. Detective Richard Cerny of the Cleveland Police Accident Investigation Unit was one of the officers tasked with investigating the incident. After the police received reports of an accident, along with the name of the business on the side of the truck, officers went to the business and were able to contact appellant and request that he return to the warehouse where he had started his day. Appellant was interviewed by Detective Cerny and seemed not to realize he was involved in a fatal hit-skip accident.

{¶7} Detective Cerny testified that appellant did not appear to be intoxicated or impaired, but appellant's supervisor insisted that federal Department of Transportation regulations required appellant to undergo mandatory drug testing. Appellant's supervisor, David Panczyk, took appellant to an independent lab that performed a urinalysis on a sample taken from appellant approximately two to three hours after the accident. The laboratory conducting the test followed federal guidelines. However,

these guidelines differ from state guidelines applicable to admissible test results in criminal prosecutions.

{¶8} Appellant filed a motion to suppress the drug test results. The trial court held a suppression hearing where it determined the two standards were not substantially similar, and the test procedure used by the independent lab did not meet the requirements in Ohio for admissible results in a criminal proceeding. The trial court suppressed the results. Even though the drug test and its results were suppressed, the trial court allowed Panczyk to testify about the test over objection.

{¶9} The state's accident reconstruction expert, Mickey Atchley, testified that appellant could not legally turn right when the bicycle was there because both vehicles occupied the lane. He testified that appellant did not exercise due care when making the turn. Atchley documented the mirrors attached to the truck appellant was driving and opined that appellant had the opportunity to observe Bingham. He also testified that appellant had passed Bingham on Prospect, as evidenced in a video recording of the intersection of East 18th and Prospect.

{¶10} Appellant called his own expert witness, Richard Stevens, who opined that appellant had the right of way and control of the lane at the time of the accident, and Bingham could not have legally passed him on the right. Stevens also testified that the state's expert witness failed to conduct the rigorous procedure necessary to document what appellant could see in his mirrors. However, Stevens testified that it was his opinion that if appellant had looked in his right-side mirrors he could have seen Bingham.

**{¶11}** The trial court found appellant guilty of aggravated vehicular homicide, but not guilty of leaving the scene of an accident. The trial court reasoned that the state had shown appellant was driving recklessly at the time of the accident. The trial court stated,

> [w]hat's interesting and is very important in this case, the uncontroverted testimony of plaintiff's expert, Mr. Atchley, was that after he reviewed all of his information he had at his disposal, he claims that the truck in question passed Sylvia Bingham on Prospect Avenue, and that is very significant because at that point the truck driver knows that there's a bicyclist in view.
>
> Now, at the corner of East 18th, the truck proceeds through the intersection before Sylvia Bingham but within seconds — and we played this over and over — within a matter of seconds. The decedent, Sylvia Bingham, is proceeding through the intersection on the same light, within ten seconds, as best as I can determine, which means that this bicycle was in close proximity to this truck; and, in fact, it would appear that the truck passed Sylvia Bingham prior to East 18th and Prospect. Had to know she was there.
> * * *
>
> No one testified as to use of blinkers in this case, no one. * * * I find it hard to believe that a college-educated graduate of Yale University wouldn't recognize when a truck has got its right blinker on and she is in close proximity to it and that this truck will cut her off. I have to assume that she would not have proceeded had she known the truck was going to cut her off. It's just common sense. So I certainly do not reach any conclusion that the truck driver in this case had his blinkers on. As a matter of fact, if I had to, I would come to a different conclusion; that the blinkers were not on.
>
> * * *
>
> Getting back to Miss Durham's testimony. She testified as to a wide turn. She said that the truck changed course. She said she had no idea the truck was going to turn right onto East 21st; that she thought that the truck would continue eastbound on Prospect. And so she was startled and she was surprised. And one of the interesting things she said is that truck accelerated so aggressively that she estimated it reached speeds of 40 miles an hour on 21st Street before it reached Carnegie.

**{¶12}** The court then went on to address what, in its eyes, constituted recklessness in this case:

> I believe that the Court has certainly indicated that the speed of the truck driver in this case was serious aggressive acceleration from zero to 40 in a short period of time, through a crosswalk, with a vehicle that could have been off-tracking, is reckless behavior, particularly when you do not check your mirrors, which you are required to do by law, and you have knowledge that there's a person inside you to the right. And so I have used the issue of speed against this defendant in determining his guilt or innocence on Count 2.

**{¶13}** The court sentenced appellant to three years in prison on November 21, 2011. Appellant then timely instituted the instant appeal raising three assignments of error:

> I. The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
>
> II. The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).
>
> III. The trial court erred by sentencing the defendant-appellant to a term of imprisonment where its findings were not supported by the record.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight of the Evidence

**{¶14}** In appellant's first and second assignments of error, he argues that his conviction is against the manifest weight of the evidence and his Crim.R. 29(A) motion should have been granted because the state did not present sufficient evidence to convict him. A ruling made pursuant to Crim.R. 29(A) addresses the sufficiency of the state's evidence. The test for sufficiency requires a determination of whether the prosecution

met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶15} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Ponce*, 8th Dist. No. 91329, 2010-Ohio-1741, ¶ 17, citing *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id*.

{¶16} Appellant was convicted of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), which states, "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [r]ecklessly[.]"

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless

indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶17} "[T]o constitute recklessness, one must act with full knowledge of the existing circumstances." *State v. Whitaker*, 111 Ohio App.3d 608, 613, 676 N.E.2d 1189 (6th Dist.1996). Evidence that appellant acted recklessly can be found in his very rapid acceleration away from the intersection, as testified to by Durham. However, speed alone is not sufficient to constitute recklessness.

> [P]roof of excessive speed in the operation of an automobile is not itself sufficient to constitute wantonness. "Wantonness" has been defined as follows: "[A] wanton act is an act done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, with full knowledge of the surrounding circumstances, recklessly and inexcusably disregards the rights of other motorists, his conduct may be characterized as wanton. (Citations omitted). *State v. Earlenbaugh* (1985),18 Ohio St.3d 19, 21-22, 479 N.E.2d 846." In *Earlenbaugh*, the supreme court noted that this definition of wantonness was "substantially similar in wording and effectively identical in meaning" to the definition of recklessness contained in R.C. 2901.22. *Id*. at 22.

*Id*., quoting *In Re Gilbert*, 12th Dist. No. CA86-10-144, 1987 Ohio App. LEXIS 8876 (Sep. 28, 1987).

{¶18} Other evidence of recklessness includes appellant's failure to use his mirrors and Durham's testimony indicating appellant turned in the intersection at the last minute.

{¶19} The state demonstrated that appellant failed to check his mirrors when he made his turn after having passed Bingham at East 18th Street. The state's accident reconstruction expert, Mickey Atchley, documented the condition of the truck's three

side-view mirrors and demonstrated that they were operational and provided a very good view of the passenger side of the truck. Appellant's expert opined that Atchley had not done the rigorous analysis necessary to document what appellant could see in the mirrors, but admitted it was his opinion that if appellant had looked in the mirrors, he would have seen Bingham.

{¶20} Further, Atchley testified that appellant knew or should have known that a cyclist was traveling on Prospect with him. Atchley testified that video evidence showed that appellant must have passed Bingham just prior to East 18th Street on Prospect Avenue, and so he was aware of her presence on Prospect.

{¶21} This, combined with Durham's testimony, shows appellant acted recklessly. Durham testified that appellant appeared to her to be going straight through the intersection, but then suddenly turned at the last minute.

{¶22} Before making his turn, appellant recklessly disregarded the safety of those around him and caused the tragic death of Bingham. The evidence, viewed in a light most favorable to the state, shows appellant acted recklessly. This evidence shows a perverse disregard for her safety and constitutes recklessness.

{¶23} The state also argues that appellant's failure to use his turn signal should be considered. It is unclear from the record whether appellant used his turn signal. No witness could testify whether appellant was using his signal. The state did not demonstrate beyond a reasonable doubt that appellant failed to use his turn signal.

**{¶24}** Appellant insists the state failed to meet its burden. Appellant's expert explained that a truck turning when it is well into an intersection is something large trucks often do to avoid driving up onto the street curb when making a right-hand turn — a practice known as "off-tracking." However, this does not negate the evidence of recklessness produced by the state.

**{¶25}** Appellant also argues that evidence of a positive drug test was impermissibly elicited at trial. The trial court allowed appellant's supervisor to testify that he took appellant for drug testing after the accident, and, over objection, that the testing facility reported a positive test result.

**{¶26}** While we generally review the admission of evidence for an abuse of discretion,[1] here the trial court recognized that it was already aware of the drug test and the results, having presided over the motion to suppress. Therefore, assuming the brief testimony about appellant's drug test was admitted in error, that error was harmless. Where there is no reasonable possibility that the unlawful testimony contributed to a conviction, the error is harmless, and therefore, will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus. When discussing the evidence and its verdict, the trial court recognized the drug test results were inadmissible and stated that it was not considering them for any purpose in this case. Therefore, any error in admission of this information was harmless.

---

[1] *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512 (8th Dist.1989).

**{¶27}** Finally, appellant argues that Bingham violated R.C. 4511.28, a provision prohibiting vehicles from passing on the right, and therefore, he was not reckless or even negligent when causing her death. This argument is not persuasive.

**{¶28}** As R.C. 4511.55(A) makes clear, a cyclist may pass other traffic on the right, provided the cyclist does so while exercising due care. *See also Potonak v. Whitmore*, 8th Dist. No. 86046, 2005-Ohio-6344. This statute states, "[e]very person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable obeying all traffic rules applicable to vehicles and exercising due care when passing a standing vehicle or one proceeding in the same direction." Here, testimony was adduced to show that appellant was going straight through the intersection, but then turned at the last minute. It was permissible for Bingham to continue through the intersection next to appellant. The statute specifically contemplates such activity for bicycles and sanctions it.

**{¶29}** Appellant's sudden turn in the intersection, as testified to by Durham, combined with the other instances of reckless behavior proven by the state, demonstrate that appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.

B. Length of Sentence

{¶30} Appellant received a three-year term of imprisonment for his third-degree felony conviction. He argues that the trial court failed to consider necessary factors before imposing a sentence above the minimum.

{¶31} Generally, this court reviews sentencing decisions in a two-step approach advanced by the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 6. However, appellant acknowledges that the sentence is not contrary to law, so the first step of this process can be skipped, and the sentence can be reviewed for an abuse of discretion. *Id*. at ¶ 19. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶32} According to Ohio sentencing guidelines set forth in R.C. 2929.11 and 2929.12, a trial court should be guided by several considerations when imposing sentence. Those factors include the probability of recidivism, whether the conduct constituting the crime is more or less serious than conduct normally constituting the offense, and the particulars of the victim and the injury inflicted. R.C. 2929.12. The trial court must balance these considerations and craft a sentence appropriate to the situation before it, selecting "the minimum sanctions that the court determines accomplish" the purposes and principles of felony sentencing "without imposing an unnecessary burden on state or local government resources." R.C. 2929.11.

{¶33} Here, the trial court acknowledged appellant's prior criminal history, which included two prior felony convictions from between 22 and 30 years ago. The court

considered this as both evidence of a prior criminal history and that appellant had led a law-abiding life for a significant period of time. The court also noted the serious harm caused to the victim and her family. Appellant claims the court did not give appropriate weight to his expression of remorse in crafting his sentence. "[T]he weight to be given any R.C. 2929.12 factor is within the trial court's discretion." *State v. Balta*, 8th Dist. No. 97755, 2012-Ohio-3462, ¶ 17. Appellant faced a sentence between one to five years. The trial court balanced the factors in R.C. 2929.12 in this case and determined that a sentence of three years was appropriate. Nothing in the record indicates this was arbitrary, unconscionable, or unreasonable. Therefore, appellant's third assignment of error is overruled.

## III. Conclusion

{¶34} The state produced substantial evidence that appellant recklessly caused the death of Sylvia Bingham. The trial court's verdict finding appellant guilty of aggravated vehicular homicide is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's sentence also does not constitute an abuse of discretion. It was within the statutory bounds and adequately punished appellant for causing the death of another.

{¶35} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
COLLEEN CONWAY COONEY, J., CONCUR